Allison G. Jackson, State Bar No. 157078
HARLAND LAW FIRM LLP
212 G Street, Suite 201
Eureka, California 95501
(707) 444-9281 telephone
(707) 445-2961 facsimile

Attorneys for Defendants
KERNAN CONSTRUCTION CO.,
BEDROCK INVESTMENTS LLC,
SCOTT FARLEY and KURT KERNEN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS,<br><br>Plaintiff,<br><br>v.<br><br>KERNEN CONSTRCUTION CO.;<br>BEDROCK INVESTMENTS LLC; SCOTT<br>FARLEY; and KURT KERNEN,<br><br>Defendants. | Case No. 4:24-cv-04067-YGR<br><br>NOTICE OF MOTION AND MOTION BY<br>DEFENDANTS KERNEN<br>CONSTRUCTION CO., BEDROCK<br>INVESTMENTS LLC, SCOTT FARLEY,<br>and KURT KERNEN TO DISMISS<br>PLAINTIFF CALIFORNIANS FOR<br>ALTERNATIVES TO TOXICS'<br>COMPLAINT FOR DECLARATORY<br>RELIEF AND INJUNCTIVE RELIEF AND<br>CIVIL PENALTIES (F.R.C.P. 12(b)(1) and<br>12(b)(6)<br><br>Date:          October 29, 2024<br>Time:          2:00 p.m.<br>Courtroom:    1, 4th Floor<br>Oakland Courthouse<br>1301 Clay Street<br>Oakland, CA 94612<br>Judge: Honorable Yvonne Gonzalez Rogers<br>Trial Date: TBD<br>Action Filed: July 5, 2024 |

1

## TABLE OF CONTENTS

2   NOTICE OF MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

3   I.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

4   II.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5   III. APPLICABLE STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

6   IV.  ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

7        A.   The Motion to Dismiss by Defendants Should Be Granted on the Ground That the
             Complaint Fails to Allege Facts Sufficient to State a Claim Against Either

8            Defendant for the First Claim for Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

9            1.   Facts Pled in First Claim for Relief Regarding Alleged Discharge at the
                  Facility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

10           2.   The Official Public Records Referred to in Plaintiff's Brief Establish That
                  There Are No Discharge Locations on the SWPPP, That the Old Discharge

11                Locations Have Been Sealed Off since 2021, and That There Has Not
                  Been Any Discharge since the Old Locations Were Sealed Off. . . . . . . . 12

12           3.   Plaintiff Has Pled No Dates Regarding Discharges . . . . . . . . . . . . . . . 15

13           4.   Plaintiff Has Pled No Facts at All of Locations Other than the Sealed-Off
                  Upper Yard for Alleged Discharges . . . . . . . . . . . . . . . . . . . . . . . . . . 16

14           5.   Plaintiff Has Pled No Facts as to Noisy Creek Being a Navigable Water
                  Covered by the Clean Water Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

15       B.   Second Claim for Relief  – SWPPP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

16       C.   Third Claim for Relief – BAT/BCT/BMP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
         D.   Fourth Claim for Relief – Monitoring/Sampling . . . . . . . . . . . . . . . . . . . . . . . . 23

17       E.   Fifth Claim for Relief – Plaintiff Did Not Include this Claim in its NOV to

18            Defendant and Has Not Adequately Pled Any Discharge from the Facility. . . . 23

19  V.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2
Cases
*Ashcroft v. Iqbal*,
3      556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15, 16

4  *Balistreri v. Pacifica Police Department*,
       901 F.2d 696 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
5
  *Bell Atl. Corp v. Twombly*,
6      550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

7  *Conley v. Gibson*,
       355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
8
  *De La Cruz v. Tormey*,
9      582 F.2d 45 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

10  *Ileto v. Glock, Inc.*,
        349 F.3d 1191 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
11
  *In re Gilead Scis. Sec. Litig.*,
12      536 F.3d 1049 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

13  *In Re Russell*,
        76 F.3d 242 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
14
  *Mack v. South Bay Beer Distributors, Inc.*,
15      798 F.2d 1279 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

16  *Mullis v. United States Bankruptcy Court*,
        828 F.2d 1385 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
17
  *Myvett v. Litton Loan Servicing*, LP,
18      2010 U.S. Dist. LEXIS 18753 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

19  *Sackett v. EPA*,
        598 U.S. 651 (2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
20
  *Sparks-Magdaluyo v. New Penn Fin.*, LLC,
21      2017 U.S. Dist. LEXIS 199196 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

22  *Telesaurus VPC, LLC v. Power*,
        623 F.3d 998 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16
23

24
Statutes
25  33 U.S.C. § 1251, *et seq*.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

26

27  Rules
  Federal Rules of Civil Procedure,
28      Rule 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Federal Rules of Civil Procedure,
    Rule 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 23

Federal Rules of Civil Procedure,
    Rule 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Regulations

Code of Federal Regulations,
    Title 33, Section 328.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Code of Federal Regulations,
    Title 40, Section 120.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Other Authorities

Revised Definition of "Waters of the United States",
    88 Fed. Reg. 3004-3144 (Jan. 18, 2023)
        (to be codified at 33 C.F.R. pt. 328 and 40 C.F.R. pt. 120) . . . . . . . . . . . . . . . . 17

Revised Definition of "Waters of the United States"; Conforming,
    88 Fed. Reg. 61964-61969 (Sept. 8, 2023)
        (to be codified at 33 C.F.R. pt. 328 and 40 C.F.R. pt. 120) . . . . . . . . . . . . . . . . 17

NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on Tuesday, October 29, 2024, at 2:00 p.m. in Courtroom 1, 4th Floor, of the above-entitled Court located at 1301 Clay Street, Oakland, CA 94612, Defendants KERNEN CONSTRUCTION COMPANY, BEDROCK INVESTMENTS LLC, SCOTT FARLEY, and KURT KERNEN will move, and do hereby move, this Court under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiff's Complaint for Declaratory and Injunctive Relief and Civil Penalties on the grounds that Plaintiff has failed to state a claim upon which relief can be granted. Specifically, this Court does not have subject matter jurisdiction over this lawsuit because failed to comply with the Notice Requirements for Civil Suits in the Fifth Claim for Relief and that Plaintiff's allegations against Defendants fail to allege facts sufficient to state a Claim for Relief for Discharge of Pollutants. This motion is based on this Notice of Motion and Motion to Dismiss, the below Memorandum of Points and Authorities, the Declaration of Allison G. Jackson filed concurrently herewith, the Request for Judicial Notice filed concurrently herewith, all pleadings and papers on file in this action, and on such oral and written evidence as maybe submitted by counsel at any hearing on said motion.

By way of this motion, Defendants seek an order of dismissal for all Five Claims for Relief on the basis that as currently pled, each one fails to plead sufficient facts to state a claim for relief on each of the five claims.

I.     <u>INTRODUCTION</u>.

This is the third suit brought by California Alternative to Toxics ("CATS") against Defendants. The first suit brought in 2016, 4:16-cv-04007-YGR, was mediated and the matter resolved by way of a consent decree. The consent decree, required Defendants to follow certain requirements demanded by Plaintiff and its "consultant" who was neither a Qualified Stormwater Practitioner ("QSP") nor a Qualified Industrial Stormwater Practitioner ("QISP"). The results from following Plaintiff's demands regarding Best Management Practices ("BMP") / Best Available Technology Economically Achievable ("BAT") / Best Conventional Pollutant Control Technology ("BCT") during this period actually raised the Numeric Action Levels ("NALs").

At the end of the 2016 matter, Plaintiff sent a Notice of Violation letter to Defendants

regarding the increase of their NALS during the time they were following Plaintiff's required changes. Defendants notified Plaintiff that they were going to a status of being a no-discharge facility and would not consider following the failed requirements demanded again by Plaintiff. In response to Defendants informing Plaintiff that they were going to eliminate all stormwater discharge with design reduction BMPs, Plaintiff filed its second lawsuit, 4:20-cv-01348-YGR. In response, Defendants made the decision that the only way to stop the current litigation and avoid all future litigation was to admit everything in CATS' second complaint and immediately implement design reduction BMPs designed to eliminate all storm water discharge from Defendants' facility. This was the only viable way to end a seemingly never-ending cycle of lawsuits. Those design reduction BMPs went into effect by mid-2021.

Defendants sealed off their four discharge locations and held storm water on site allowing it to dissipate into the soil for the rainy seasons of 2021-2022, 2022-2023, and 2023-2024. Plaintiff had opportunity to review these changes prior to the expiration of the injunction. Defendants remained in compliance during the time the injunction was active. Defendants remained under the injunction until May 1, 2023.

Defendants' Stormwater Pollution Prevention Plan ("SWPPP") dated February 2022, and part of the official records of the State Water Resources Control Board, provides that all of the previous discharge locations were sealed/plugged at the facility in 2021 and that all stormwater from that time on remains on site to percolate back into the ground. RJN, Exh. A, section 2.1.4 at 6-7 and appendix A at 38-42. That SWPPP remains in effect today.

Defendants' Annual Reports, (official records with the State Water Resources Control Board) indicate that the facility has "eliminated" all stormwater discharge during the 2021-2022 season, the 2022-2023 season, and 2023-2024 season. RJN, Exh. B-D.

Plaintiff's current lawsuit claims Defendants have been discharging stormwater since the day the 2021 injunction expired or at unnamed, undated, rain events, and without any sufficient, much less plausible facts that any discharge ever occurred. Plaintiff's only "facts" regarding discharge is based upon the 2022 SWPPP which states that there are no discharge locations. The *annual* reports from the same records show no discharge from the facility during the time frame

of the complaint. Plaintiff provides nothing more than conclusory statements without any factual content that there has been any stormwater discharge from the day the injunction expired. Plaintiff does not provide plausible facts regarding discharge from the sealed and plugged former sites in the upper yard or the lower yard. The dates for the alleged discharge are speculative, and the dates are contradictory in the complaint. There are no facts at all alleged regarding the location of other discharge points not identified in the 2022 SWPPP.

Plaintiff does not provide any sufficient facts as to why it would be "necessary" for Defendants to amend and update their SWPPP when there are no facts regarding actual discharge and when the official records state that Defendants have eliminated storm water discharge (Second Claim for Relief). Plaintiff does not provide any facts whatsoever as to why it would be necessary for Defendants to revise their BMPs when they have eliminated storm water discharge (Third Claim for Relief). Plaintiff does not provide any facts whatsoever as to why it would be necessary to sample stormwater discharge when discharge has been eliminated (Fourth Claim for Relief). Plaintiff failed to include claims of failure to file a Technical Report regarding discharge in its Notice of Violation, therefore, this claim is barred, and the complaint fails to provide facts or legal authority as to how this applies to non-dischargers.

Defendants have filed this Motion to Dismiss on the basis that the complaint fails to plead facts that would allow this Court to draw the reasonable inference that Defendants are liable for the misconduct alleged. Plaintiff's threadbare recitals of the elements of a claim for relief, supported by mere conclusory statements, do not suffice.

II.   <u>FACTS</u>.

In 2016, Plaintiffs filed a Clean Water Act ("CWA") complaint against defendants asserting that they had discharges that were non-compliant with BMPs amongst other things in their discharge from their facility (4:16-cv-04007-YGR). That case resulted in a consent decree. The consent decree required Defendants to follow Plaintiff's specific directives in their management practices regarding stormwater discharge from their facility.

In 2020, after completion of the consent decree between Plaintiff and Defendants in the 2016 matter, Plaintiff filed another CWA complaint (4:20-cv-01348-YGR), basing CWA

violations on, amongst other things, that Defendants violated the CWA by their discharge while following the consent decree directives, irrespective of the fact that such BMPs were required by CATS in the consent decree in the earlier 2016 matter. Defendants made the choice to take their facility to a status of eliminating all stormwater discharge. In order to effectuate this plan, and terminate the new litigation, Defendants admitted liability, and the court placed them under an injunction. Defendants went to a no-discharge status during the 2021-2022 rainy season, and maintained that status during the 2022-2023 rainy season, and the 2023-2024 rainy season. RJN, Exh. A, section 2.1.4 at 6-7 and appendix A at 38-42; Exh. B-D.

During the time Defendants were under an injunction in 4:20-cv-01348-YGR, there were no violations of the injunction. The injunction ended May 2, 2023.

During the 2022 rainy season, Defendants filed a new SWPPP ("2022 SWPPP"). RJN, Exh. A; and see Complaint ¶¶ 101 and 104. The 2022 SWPPP states in section 2.1.4 that all previous discharge locations in the upper yard were sealed and plugged and renamed as observation locations; it also states there were no discharge locations in the lower yard. The SWPPP includes, among other elements: (1) the facility name and contact information; (2) site maps; (3) a list of industrial materials; (4) a description of potential pollution sources; (5) an assessment of potential pollutant sources; (6) minimum BMPs; (7) advanced BMPs, if applicable; (8) a monitoring implementation plan; (9) an annual comprehensive facility compliance evaluation; and (10) the date that the SWPPP was initially prepared and the date of each SWPPP amendment, if applicable. RJN, Exh. A, section 2.1.4 at 6-7.

Defendants filed Annual Reports under their General Permit for years 2021-2022, 2022-2023, and 2023-2024 confirming they eliminated discharge and also that there was no Technical Report to file. RJN, Annual Reports, Exh. B-D.

On July 5, 2024, Plaintiff filed the current complaint alleging unlawful discharges from the day that the injunction ended in the 2020 matter (i.e., May 2, 2023) with the sole factual basis of unlawful discharge based upon the 2022 SWPPP. Complaint ¶¶ 101 and 103.

III.   APPLICABLE STANDARDS.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged

in a complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). A Rule 12(b)(6) motion is proper when there is either "a lack of cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990); see also, *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). To survive a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must make a "short and plain statement" providing "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 550, 570 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiff must proffer more than a statement that is merely consistent with a valid theory of recovery. *Id.* at 557. Rather, the statement must include "enough factual matter (taken as true) to suggest" a right to relief. *Id.* at 556. The statement must have "enough heft to show that the pleader is entitled to relief" and must "raise a right to relief above a *speculative* level." *Id.*

"Detailed factual allegations" are not required, but the Rule does call for sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual *content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Although the court should accept the plaintiff's allegations as true and draw all reasonable inferences in favor of the plaintiff in deciding whether the plaintiff has stated a claim, the court should *not* accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008); see also *Ashcroft*, 556 U.S. at 678 (no threadbare recitals of the elements supported by mere conclusory statements).

Facts subject to judicial notice may be considered by a court on a motion to dismiss. *In Re Russell*, 76 F.3d 242, 244 (9th Cir. 1996); *see also Sparks-Magdaluyo v. New Penn Fin.*, LLC, 2017 U.S. Dist. LEXIS 199196, at *4 (N.D. Cal. 2017). A court may do so without

converting the motion into one for summary judgment. *See Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1388 (9th Cir. 1987); *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) ("court may properly look beyond the complaint to matters of public record").

IV.   <u>ANALYSIS</u>.

Defendants' Motion to Dismiss should be granted on the ground that the allegations in Plaintiff's complaint do not satisfy the federal pleading requirements. Plaintiff alleges only conclusory statements that there were/are discharges from Defendants' facility into Waters of the United States. Plaintiff only alleges Defendants' 2022 SWPPP, stating that it identifies those locations in both the upper yard (Complaint ¶ 101) and in the lower yard (Complaint ¶ 103).

Paragraph 101 of the complaint alleges that the 2022 SWPPP states that Defendants have discharge locations in the upper yard that may discharge. A review of the official record of the 2022 SWPPP contradicts this statement. The official records from the State Water Board referred to by Plaintiff actually says at Section 2.4.1.2:

> Stormwater discharges from the southern yard have been significantly limited by the installation of an infiltration network spanning the southeast and southern perimeter. The infiltration network is approximately 1,000 feet long and comprises two separate trenches that nearly meet north and east of former discharge location SL-2 (See Figure 3 in Appendix A). The trenches are backfilled with gravel and remain pervious on the surface. Sediment traps that were formerly discharge locations and new settling traps located west of the storage building at the facility have been plumbed to drain into the infiltration trenches. If the sediment traps become full, the water will be pumped out and placed in the stormwater retention area located in the northern yard. The locations and sizes of the existing sediment traps coincided with already low areas along the southern yard boundary and allowed space given the constraints of materials storage operations. The traps were not formerly designed. If during the course of a historically significant wet season, the infiltration trenches were to reach capacity, stormwater would backflow into the sediment traps. Although the discharge pipes from the traps have been plugged, if a storm event overwhelmed the system discharge would occur from the sediment traps. Former discharge locations from the southern yard are now observation locations. RJN, Exh. A, at 7.

The 2022 SWPPP cited in Complaint paragraph 101 shows there are no longer any existing discharge locations, and that they have been sealed off. There are no factual allegations that every day beginning May 2, 2023, was part of any historically significant wet season. Nor are facts alleged that every day beginning May 2, 2023, the former discharge points were

intentionally opened. Nor are facts alleged that the sediment traps were overwhelmed each day resulting in a failure allowing and resulting in daily discharge from the sediment traps.

Complaint paragraph 103 alleges the 2022 SWPPP states that stormwater from the lower yard is "captured by vegetated swales." There are no factual allegations to support a conclusory statement that there was discharge from the lower yard. The 2022 SWPPP at section 2.4.1 and the site maps state this stormwater is held in a holding pond before being pumped to the upper yard infiltrators. (See RJN A, Appendix A, Site Map North Yard.) Defendants' Annual Reports, which are also part of the same official records, also state that there was no discharge from the facility at all (Annual Report 2021-2022, 2022-2023, and 2023-2024, RJN B, C, D). There is *nothing* else alleged factually in the complaint to support the threadbare, conclusory allegation of discharge in the complaint other than there are discharge locations in the SWPPP. Plaintiff has not pled factual *content* that allows this court to draw the reasonable inference that the Defendants have discharged any stormwater at all. Plaintiff's threadbare recitals of the elements of a Claim for Relief, supported by mere conclusory statements, do not suffice. RJN, Exh. A-D.

Moreover, there are no dates in the complaint regarding when there could be a discharge from the observation locations. Plaintiff alleges that stormwater is discharged both everyday from May 2, 2023, and then on "significant rain events" which is not defined. There is no factual content alleged to allow this Court to determine that it is plausible that it rained every day from May 2, 2023, nor what a "significant rain event" is and what dates that occurred.

There are no factual allegations of any other discharge locations at the facility other than a belief that others *may* exist. There are no facts to support this conclusory threadbare assertion.

The second through fifth claims for relief fail to state a claim for relief as they are all based upon the factually bereft premise that Defendants are actively discharging during the asserted time frame. There are no facts alleged regarding the Second Claim for Relief (failure to update the 2022 SWPPP) as to why it could be necessary to update an SWPPP when the facility's current plan has eliminated all discharges from the facility. Nor are there sufficient facts to support the Third Claim for Relief (failure to use BMPs to prevent or minimize discharge) when there are no discharge from the facility. Nor are there sufficient facts to support the Fourth Claim

for Relief (failing to have an adequate monitoring plan regarding discharges) when there is no discharge from the facility. Nor are there sufficient facts nor cognizable claim for relief to support the Fifth Claim for Relief (discharger failing to file technical reports for discharges) when Plaintiff failed to include this in its NOV and when there is no discharge from the facility.

A.  The Motion to Dismiss by Defendants Should Be Granted on the Ground That the Complaint Fails to Allege Facts Sufficient to State a Claim Against Either Defendant for the First Claim for Relief.

1.  Facts Pled in First Claim for Relief Regarding Alleged Discharge at the Facility.

Allegations pled in support of the First Claim for Relief that Defendants discharge in violation of the General permit:

During rain events, storm water with pollutants is discharged from Defendants facility into Noisy Creek. Complaint ¶89. The 2022 SWPPP states that if storm water collection system were to reach capacity, the upper yard would discharge from several points at the south end of the upper yard. Complaint ¶101. The 2022 SWPPP states that stormwater from the lower yard is captured in vegetated swales. Complaint ¶103. Plaintiff is informed and believes that the facility discharges storm water associated with industrial activities from additional points not identified on the 2022 SWPPP. Complaint ¶104. Storm water associated with industrial activities generated within the lower yard discharges into Noisy Creek. Complaint ¶105. Noisy creek is a Water of the United States. Complaint ¶108. Since at least May 2, 2023, Defendants have discharged stormwater polluted with sediment from the facility to Hall Creek and Noisy Creek. Complaint ¶122. Plaintiff is informed and believes that during every significant rain event, storm water flowing from the facility becomes contaminated and flows from the facility into Hall Creek and Noisy Creek. Complaint ¶ 123. Everyday since at least May 2, 2023, Defendants have discharged polluted storm water from the facility. Complaint ¶131.

2.  The Official Public Records Referred to in Plaintiff's Brief Establish That There Are No Discharge Locations on the SWPPP, That the Old Discharge Locations Have Been Sealed Off since 2021, and That There Has Not Been Any Discharge since the Old Locations Were Sealed Off.

The State Water Board official records specifically referred to by Plaintiff for the site

show that there are no active or open discharge locations as alleged in the Complaint in paragraphs 89, 101, 103, 104, 105, 122, and 131. Defendants' Request for Judicial Notice for the 2022 SWPPP, which is the sole factual assertion for discharge for the upper yard and directly referenced in paragraph 101, provides the old discharge locations have been sealed/plugged and are now observation locations, the stormwater is held onsite, and the Appendix map shows that there are no discharge locations at the facility:

### 2.1.4.2 Description of Existing Site Drainage Areas

Stormwater discharges from the southern yard have been significantly limited by the installation of an infiltration network spanning the southeast and southern perimeter. The infiltration network is approximately 1,000 feet long and comprises two separate trenches that nearly meet north and east of former discharge location SL-2 (See Figure 3 in Appendix A). The trenches are backfilled with gravel and remain pervious on the surface. *Sediment traps that were formerly discharge locations and new settling traps located west of the storage building at the facility have been plumbed to drain into the infiltration trenches. If the sediment traps become full, the water will be pumped out and placed in the stormwater retention area located in the northern yard.* The locations and sizes of the existing sediment traps coincided with already low areas along the southern yard boundary and allowed space given the constraints of materials storage operations. The traps were not formerly designed. *If during the course of a historically significant wet season, the infiltration trenches were to reach capacity, stormwater would backflow into the sediment traps. Although the discharge pipes from the traps have been plugged, if a storm event overwhelmed the system discharge would occur from the sediment traps.* Former discharge locations from the southern yard are now observation locations. RJN, Exh. A at 7.

### 5.6.2 Sampling Locations

Sampling locations include locations where industrial activity impacted stormwater discharges from the site. Discharge reduction BMPs have been implemented at both the southern and northern yards that are anticipated to cease discharges from those areas. Former discharge locations SL-1 through SL-4 are now "observation locations" (OL-#). If a discharge is observed from one of these locations a sample of the discharge will be collected. The observation locations are shown on the site maps in Appendix A and are included in Table 5.1. RJN, Exh. A at 26 and 37.

Appendix A (the facility site maps) shows no discharge locations in the upper yard on page 41, nor in the lower yard on page 42. RJN, Exh. A.

The 2021-2022, 2022-2023, and 2023-2024 Annual Reports from the water board, which Defendants have requested Judicial Notice of, show no discharges at all from the facility from 2021 to present. RJN, Exh. B-D.

Including paragraph 101, the complaint is threadbare and conclusory regarding any discharge from the facility from May 2023 through July 2024. There are no existing discharge

locations in the upper yard, and all prior discharge locations have been plugged or sealed per the document referred to in paragraph 101. There are no facts alleged that each day from May 2, 2023 on was an historical rain event, nor that such overwhelmed the system, nor that water did not get pumped to holding ponds, nor that the system was overwhelmed resulting in a failure. See §2.4.1.2, 2022 SWPPP, RJN, Exh. A at 7.

There are no allegations of discharge as to the lower yard in the complaint at all. The only references to the lower yard in the complaint are paragraphs 103 and 105. The 2022 SWPPP referred to in paragraph 101, and the maps contained in that 2022 SWPPP, show no discharge locations described nor mapped at all in the lower yard. All stormwater is held onsite in a holding pond, and there were vegetated swales installed along the perimeter of the lower yard per the 2022 SWPPP. The complaint pleads absolutely no facts of the failure of this swale and holding pond resulting alleged discharge on any day.

The complaint is utterly silent as to any facts, sufficient to pass federal pleading standards, that there are other unnamed discharge points at the facility.

Plaintiff has not and cannot plead that any or all of the sealed/plugged observation locations in the upper yard were intentionally opened on May 2, 2023, and everyday thereafter, or on significant (undated) rain events (see below). Nor has Plaintiff pled facts that the sediment traps were overwhelmed by daily historically significant rain events. In fact, paragraph 101 seems specifically phrased to avoid Plaintiff's problem with the lack of any facts in support of the conclusory statement of discharges, even though Plaintiff has cited to the Defendants' 2022 SWPPP, which contradicts this, as do all the official Annual Reports.

Plaintiff has the official 2022 SWPPP and Annual Reports since they have referred to the SWPPP in the complaint confirming "no discharge" locations nor discharge from 2021 to present. There is *nothing* else alleged factually in the current complaint to support the threadbare conclusory allegation of discharge, other than there are "discharge locations" in the 2022 SWPPP. This is directly contradicted by the 2022 SWPPP and the Annual Reports. The first claim for relief must be dismissed with leave to amend to force Plaintiff to plead sufficient facts that there are either: 1) active discharge locations (both in the upper and lower yards) that are

new locations; or 2) old discharge locations that have been opened; or 3) that any sediment traps

were overwhelmed resulting in an actual discharge from the facility on either: a) everyday since

May, 2, 2023; or b) on unnamed, undefined "significant rain events" from May 2, 2023 to

present. Plaintiff cannot do so consistent with Federal Rule Civ. Proc., Rule 11.[1]

### 3. <u>Plaintiff Has Pled No Dates Regarding Discharges</u>.

Plaintiff's complaint does not specify any dates on which Defendants were engaged in

conduct which allegedly violated the CWA by unlawful discharges. Rather, Plaintiff only

generally alleges a date range as to the alleged acts and/or omissions of all of the "Defendants."

*See e.g.*, Complaint ¶89 (during rain events); ¶ 122 (since May 2, 2023); ¶123 (during significant

rain events); and ¶131 (everyday since May 2, 2023). These conclusory "date range" allegations

against "all defendants" appear to be an attempt to avoid the lack of factual support of their

threadbare conclusory allegations, which are in contradiction to the official records.

Plaintiff's failure to specify the dates on which Defendants allegedly engaged in conduct

which violated the CWA does not meet federal pleading standards. *See e.g., Myvett v. Litton

Loan Servicing*, LP, 2010 U.S. Dist. LEXIS 18753, *4 (N.D.Cal. Mar. 3, 2010) (statute of

limitations case); *Ashcroft v. Iqbal*, 556 U.S. at 663 (The complaint must contain "sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face. ... A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."); *see also

Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

Plaintiff states that it is informed and believes that, during every significant rain event,

storm water flowing from the facility becomes contaminated, flowing from the facility into Hall

Creek and Noisy Creek. Complaint ¶123. Plaintiff does not describe what a "significant event" is

---

[1] Plaintiff alludes to a NOV letter to Defendants by the State Water Board in paragraphs 92, 93 and 97. That purported letter dealt only with a Notice of Violation of Water Code Section 13267 (NOV) dated May 21, 2024, limited to State Water Code assertions of Waters of the State, to wit, the Porter-Cologne Water Act and State Water Code 13267 and whether a manmade plugged drainage ditch is a Water of the State holding stormwater onsite, to pump back to the infiltrators to be infiltrated back into the soil is regarded as "Waters of the State." The blocked culvert is depicted on RJN A, Appendix A, North Yard Site Map. *See* Decl. Of Jackson, ¶¶8-10.

nor provide any date to provide notice to Defendants.

Plaintiff has also alleged that "every day since at least May 2, 2023, Defendants have discharged polluted storm water from the facility." Complaint ¶131. There is a complete failure to provide factual information as to what dates and how this could occur even when it was *not* raining. There is nothing else alleged factually to support the threadbare conclusory allegations.

4.  Plaintiff Has Pled No Facts at All of Locations Other than the Sealed-Off Upper Yard for Alleged Discharges.

Plaintiff  fails to provide any sufficient/plausible facts regarding "other locations" of discharge points which Defendants allegedly violated the CWA. Complaint ¶ 104. The complaint is bereft of any facts in support of paragraph 104. This fails to meet federal pleading standards. *See e.g., Myvett v. Litton Loan Servicing*, LP, 2010 U.S. Dist. LEXIS 18753, *4 (N.D.Cal. Mar. 3, 2010); *Ashcroft v. Iqbal*, 556 U.S. at 663.

 Defendant has asked this Court to take judicial notice the 2022 SWPPP and Annual Reports. The 2022 SWPPP directly contradicts the conclusory statement that the 2022 SWPPP identifies active discharge locations. The document states that prior to 2022 there were discharge locations that are now sealed and are no longer used. RJN, Exh. A at 6-7. The Annual Reports which are Water Board Official Records subject to judicial notice, clearly state that the sealed discharge locations are checked at rain events and have remained sealed with no discharges from the facility at all, confirming the no discharge status. RJN, Exh. B-D.

Other than one paragraph based on information and belief (Complaint ¶104), there is nothing else pled, neither plausible nor sufficient, as a factual basis for paragraph 104. *See Ashcroft v. Iqbal*, 556 U.S. at 663; *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). The claim in paragraph 104 that there are other discharge locations is factually deficient, and the Court should *not* accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

This court must dismiss the First Claim for Relief, and force Plaintiff to plead facts in support of the conclusory fact-bare assertion that Defendants are discharging into Noisy Creek. The Court must require that Plaintiff plead the dates of the alleged discharges and the locations

from which the discharges have occurred.

5.    Plaintiff Has Pled No Facts as to Noisy Creek Being a Navigable
Water Covered by the Clean Water Act.

There are no facts pled in support of the conclusory statement in the complaint at paragraph 108 that "Noisy Creek is a Water of the United States. Noisy Creek is, in fact, an ephemeral creek which dries up most of the year. The United States Supreme Court has clarified what Waters of the United States are, and the U.S. Army Corps of Engineers ("Corps") and U.S. Environmental Protection Agency ("EPA") on Aug. 29, 2023, issued a final rulemaking revising the definition of Waters of the United States ("WOTUS"). Plaintiff now must plead facts that Noisy Creek is a Jurisdictional Tributary/permanent WOTUS.

In *Sackett v. EPA*, 598 U.S. 651 (2023), the Supreme Court concluded the term Waters of the United States encompasses only relatively permanent waters, and not waters that are dry or seasonal (i.e., ephemeral waters). The issue in *Sackett* was whether wetlands on their property were jurisdictional waters under the CWA because they were near a ditch that fed into a creek, which fed into a navigable, intrastate lake. The Court concluded that wetlands are considered WOTUS only when they have a continuous surface connection to other WOTUS, so there is no clear demarcation between waters and wetlands. *Sackett v. EPA*, 598 U.S. at 678-679.

The Corps and EPA on Aug. 29, 2023, issued a final rulemaking revising the definition of "Waters of the United States" within Corps1 and EPA2 regulations, pursuant to the CWA, 33 U.S.C. § 1251, *et seq.* ("WOTUS Rule"). The WOTUS Rule amends the Biden Administration's January 2023 "Revised Definition of 'Waters of the United States'" and was issued in order to conform the definition of "WOTUS" to the May 25, 2023, opinion of the U.S. Supreme Court in *Sackett v. EPA*, 598 U.S. 651 (2023). 88 Fed. Reg. 3004-3144 (Jan. 18, 2023); 88 Fed. Reg. 61964-61969 (Sept. 8, 2023); see also 33 C.F.R. § 328.3; 40 C.F.R. § 120.2.

The new WOTUS Rule significantly narrows the reach of the CWA, excluding for example, intermittent and ephemeral streams, like many in the Western United States. Intermittent ephemeral streams are not be considered jurisdictional given that they are not "relatively permanent, standing or continuously flowing bodies of water." The WOTUS Rule

defines "Waters of the United States" to include: relatively permanent, standing or continuously flowing intrastate lakes and ponds with a continuous surface connection to (but are not themselves) a Jurisdictional Water, Jurisdictional Impoundment, Jurisdictional Tributary, or Jurisdictional Wetland.

Noisy Creek is a seasonal, rain-fed creek. It is neither permanent nor continuously flowing, and it runs dry most of the year since its source is rainfall. Not only are there no facts to support the assertion that there have been any discharges from the facility, Plaintiff has not pled facts that this seasonal, ephemeral, intermittent Noisy Creek falls under the CWA as a Jurisdictional Tributary. Plaintiff must be forced to plead facts that it is permanent.

B.     Second Claim for Relief – SWPPP.

Complaint paragraph 63 states:

The SWPPP must include, among other elements: (1) the facility name and contact information; (2) a site map; (3) a list of industrial materials; (4) a description of potential pollution sources; (5) an assessment of potential pollutant sources; (6) minimum BMPs; (7) advanced BMPs, if applicable; (8) a monitoring implementation plan; (9) an annual comprehensive facility compliance evaluation; and (10) the date that the SWPPP was initially prepared and the date of each SWPPP amendment, if applicable.

Complaint paragraph 64 states: Dischargers must revise their SWPPP *whenever necessary* and certify and submit via the Regional Board's Storm Water Multiple Application and Report Tracking System ...  their SWPPP within 30 days whenever the SWPPP contains significant revisions(s).... Complaint paragraph 95 states: The Regional Board's Notice of Violation alleges that Kernen Construction violated Section X.B of the General Permit by failing to revise the SWPPP and site map since 2022 to reflect current conditions at the site. Complaint paragraph 114 states: The Facility's SWPPP has not been revised since February 2022 to reflect current conditions at the Facility. Complaint paragraph 115 states: The Facility's SWPPP fails to accurately identify each discharge point at the Facility. Complaint paragraph 117 states: Defendants' SWPPP does not include a compliant site map, adequate pollutant source descriptions or assessments, adequate BMPs or descriptions of BMPs. Complaint paragraph 136 states: Defendants have failed to develop and implement an adequate SWPPP for its Facility, in violation of General Permit Section X.

1

2

Defendants have requested this Court to take Judicial Notice of the General Permit for the Court to review General Permit Section X.  RJN, Exh. E.

3

4

5

6

7

Plaintiff has cited to no sufficient facts to support an allegation that revision of Defendants' timely filed 2022 SWPPP "was necessary" after it was filed in 2022. *See* Complaint ¶¶ 64, 114 and 136. Plaintiff must be forced to plead facts as to why it "was necessary" to revise the 2022 SWPPP, especially when the Annual Reports document no discharges from the facility, and Plaintiff cannot plead the facts necessary to support the First Claim for Relief (see above).

8

9

10

11

12

13

14

15

Plaintiff has not pled that the 2022 SWPPP did not include, among other elements: (1) the facility name and contact information; or (2) a site map; or (3) a list of industrial materials; or (4) a description of potential pollution sources; (5) or an assessment of potential pollutant sources; (6) or minimum BMPs; (7) or advanced BMPs, if applicable; (8) or a monitoring implementation plan; (9) or an annual comprehensive facility compliance evaluation; and (10) or the date that the SWPPP was initially prepared and the date of each SWPPP amendment, if applicable. These elements are what is required under General Permit Section X, and the 2022 SWPPP contains those elements.

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff has cited no facts to support any assertion that the Defendants have failed to identify each discharge point on the 2022 SWPPP (Complaint ¶115.)  As set forth above, Plaintiff has not been able to even identify any actual discharge from any location. The 2022 SWPPP states and shows by maps that there are no discharge points existing at the facility and now there are only observation locations. Plaintiff has not pled where there the active discharge points that have not been identified at all in the 2022 SWPPP.  Plaintiff only asserts complaint paragraph 101 identifying discharge points (Complaint ¶101: "SWPPP states that if the storm water collection system were to reach capacity, the Upper Yard would discharge storm water from several points along the southern boundary of the Upper Yard"). *See* RJN, Exh. A, section 2.1.4 at 6-7 and appendix A at 38-42: Section 2.4.1 states only that there is a possibility that in an historical rain year, the sediment traps could be overwhelmed resulting in a discharge. The 2022 SWPPP does not identify any current or active discharge locations; all previous locations were sealed/plugged; and the official records of the Annual Reports (RJN, Exh. B-D) confirm this. If

Plaintiff is trying to allege that there are active discharge points not identified in the SWPPP, it must amend and say where they are located. The SWPPP includes all of the required elements of a SWPPP under the language of Section X, and Plaintiff has not alleged that it does not have the required elements.

The current 2022 SWPPP was filed on time and there are no allegations that it was not. There are no factual allegations/support for why SWPPP revision would be necessary since all the required elements have been met in the 2022 SWPPP.

Complaint paragraph 136 asserts without supporting facts that Defendants have failed to develop and implement an *adequate* SWPPP for its Facility, but the Complaint is bereft of facts in support of the allegation of "inadequacy". The 2022 SWPPP has all of the required elements of Section X.

There is a site map included and described in the 2022 SWPPP and the inclusion is required under General Permit Section X. The SWPPP referred to in the complaint and which Defendants have requested judicial notice of states in (RJN, Exh. A) section 2.5 on page 11 the required site map information in table 2.3; it also includes Appendix A which contains the site maps. There are no other facts and support of this conclusory assertion that it is *non-compliant* since it does have a site map which is what is required.  These assertions in paragraph 117 are contradicted by the very document Plaintiff cites to. There are no other facts, sufficient or plausible, to support this assertion in paragraph 117.  Plaintiff must be forced to plead sufficient facts as to this claim for relief.

Complaint paragraph 117: Defendants' SWPPP does not include a compliant site map, adequate pollutant source descriptions or assessments, adequate BMPs or descriptions of BMPs. However, the Complaint is bereft of facts in support of each allegation in paragraph 117.

Plaintiff makes the conclusory statement in paragraph 117 there are no adequate pollution source descriptions. The 2022 SWPPP which defendants are asking the court to take judicial notice of and which has been repeatedly referred to as the source document by Plaintiff, describes in (RJN, Exh. A) section 2.3.1 at page 8, a description of potential pollutant sources, and the description of the sources is set forth in table 2.1 at page 9, which are the required elements of a

SWPPP per Section X. Plaintiff asserted no facts whatsoever, much less plausible or sufficient, regarding the alleged inadequacy since the very document they refer to does in fact include the description as required by the General Permit X. Plaintiff  must allege sufficient and plausible facts in support of why or how these descriptions are inadequate along with how what was filed was not compliant with General Permit X since the 2022 SWPPP does include: X(4) a description of potential pollution sources; and X(5) an assessment of potential pollutant sources.

Plaintiff makes the conclusory statement in paragraph 117 that there are no adequate BMPs or descriptions of BMPs in the 2022 SWPPP.  General Permit Section X(6) requires "minimum BMPs. The source document referred to from 2022 clearly states the description of the BMPs for the facility *as required by General Permit X.*. As discussed below, BMPs are to *reduce or eliminate* discharge. Plaintiffs have failed to plead facts for the Court to ascertain there is any content to this claim in paragraph 117 that the current BMPs are inadequate because they are not at least "minimum BMPs." RJN, Exh. A, sets forth the BMPs in place to reduce or eliminate discharge from the facility: Section 1.1 on page 1; section 1.7 on page 3; annual evaluations of BMPs page 4; section 1.10, comprehensive facility compliance evaluation at 4-5; section 2.1.5 and table 2.1 assessment of pollution sources and corresponding BMPs at 7-9; 2.4 identification of non-storm water discharges at 10 -11; section 3.1 minimum BMPs at 13-14, table 3.1 minimum BMPs at 14, Appendix F at 54, and the descriptions of BMPs in sections 3.1.1-3.1.7 and section 3.2 at 19-20 with tables 3.3 and 3.4 at 20-21. Plaintiff must plead sufficient and plausible facts in support of this claim for relief and paragraph 117 that Defendants SWPPP does not include "minimum BMPs. Plaintiff has not. Plaintiff has simply made this conclusory statement of "inadequacy" with no factual content instead of facts that the 2022 SWPPP does not include "minimum BMPs." Plaintiff must plead sufficient facts as to failing to include minimum BMPs which are required by Section X.

This court must dismiss the Second Claim for Relief and force Plaintiff to plead facts in support of the conclusory fact-bare assertions that Defendants are in violation for failure to revise their SWPPP and/or that the SWPPP does not have the required or adequate information and/or why it was  necessary to revise the SWPPP, especially since the BMPs have eliminated all

discharge. Nor is there anything as to why the identification of pollution sources in the current SWPPP is inadequate. Nor the site map inadequate. Nor are there any facts at all as to why the current description of minimum BMPs is inadequate.

C.   Third Claim for Relief – BAT/BCT/BMP.

Complaint allegations:

Paragraph 145: Defendants have failed, and continue to fail, to reduce or prevent pollutants associated with its industrial activities from being discharged to waters of the United States. Paragraph 146: Defendants discharge storm water ... during every significant rain event. Paragraph 147: Defendants' failure to develop and/or implement BMPs that achieve the pollutant discharge reductions ... is a violation of the General Permit's Effluent Limitations and the Act.

General Permit Requirements for BAT/BCT/BMP:

Under the terms of the General Permit issued by the California State Water Resources Control Board, Section I Findings and referred to in Complaint ¶ 147 states that: "1.The Federal Clean Water Act (Clean Water Act) *prohibits certain discharges of storm water containing pollutants except in compliance with a National Pollutant Discharge Elimination System (NPDES) permit"* and that *"[t]he NPDES permit must require implementation of Best Available Technology Economically Achievable (BAT) and Best Conventional Pollutant Control Technology (BCT) to reduce or prevent pollutants in storm water discharges and authorized nonstorm water discharges (NSWDs)*.  In 32. "This General Permit requires control of pollutant discharges using BAT and BCT to reduce and prevent discharges of pollutants...." RJN, Exh. E, General Permit, §§ I.A.1; I.D.31and 32 at 1, 5 [Emphasis added.].

Defendants' 2022 SWPPP and associated appendix maps state unequivocally that there are no discharge locations at the facility and that all prior discharge locations have been sealed. The Annual Reports document no discharges from 2021 to present. Because Plaintiff cannot establish that there was any discharge whatsoever during the operable time in their complaint, there are insufficient facts to make a plausible Third Claim for Relief for failing to "reduce or eliminate" discharges by insufficient BAT/BCT. The official records state there are no active discharge locations, and the official records state that there have not been any discharges from

1
2
3
4

the facility during the 2021-2-22 rainy season, the 2022-2023 rainy season, and the 2023-2024 rainy season. Since Defendants have reduced and have eliminated their stormwater discharges, then Plaintiff has failed to plead *facts* that Defendants have not reduced or eliminated discharge (*see above*, First Claim for Relief, V.A.1-5).

5
6
7
8
9
10
11
12

The Court must grant the motion under Rule 12(b)(6). Plaintiff must be forced to amend and plead facts sufficient to make a plausible claim for the Third Claim for Relief that Defendants have failed to reduce or eliminate discharge by way of their current BAT/BCT/BMP. Plaintiff must establish that there were discharges; and for which dates - either daily or significant rain events when the system was overwhelmed; resulting in multiple (daily) discharges of stormwater into Waters of the United States. Plaintiff must then be forced to plead facts to support this claim for relief that the current BMPs have not reduced discharge since the BMPs went into place in 2022 to reduce or eliminate discharge.

13

D.     Fourth Claim for Relief – Monitoring/Sampling.

14
15
16
17
18

General Permit Sections XI provides for monitoring, Visual Observations and Sampling. Pursuant to section XI, (General Permit) sampling must take place *at a discharge event*, Plaintiff has not pled sufficient facts to establish any discharge event anywhere in the upper or the lower yard. The court must grant the Motion under Rule 12(b)(6) and force Plaintiff to plead facts in support of an event to sample.

19
20

E.     Fifth Claim for Relief – Plaintiff Did Not Include this Claim in its NOV to Defendant and Has Not Adequately Pled Any Discharge from the Facility.

21
22
23
24
25
26
27
28

The Fifth Claim for Relief fails on the basis that there was no "notice" of this potential claim in Plaintiff's Notice of Violations which was dated March 24, 2024. A Notice of Violations and Intent to File Suit under the CWA must mandatorily include: detailed identification of the alleged violation, the specific CWA requirement being violated, the location of the violation, the date(s) of the violation, the responsible party, and full contact information of the person filing the notice; essentially providing sufficient information to allow the recipient to understand the nature of the alleged violation and take corrective action before a lawsuit is filed. Because this claim was not noticed in the March 24, 2024, NOV from Plaintiff, Defendants ask

this Court to dismiss this Fifth Claim without leave to amend. *See* Complaint Exhibit 1, ECF Doc. 1-1.

Plaintiff alleges in paragraphs 163, 164, and 165 of the complaint that the General Permit requires dischargers to compare the results of their sampling and prepare an exceedance response action report. Plaintiff's Fifth Claim for Relief fails for the same reason that the second through fourth claims for relief fail: Plaintiff has cited no facts to support the proposition that there has been a discharge from the facility. The 2022 SWPPP actually states that there are no discharge points, only observation locations, and that the old discharge points have been plugged/sealed.  The Annual Reports confirm the elimination of discharge since 2021. Plaintiff has cited no law that requires non-dischargers to sample nor how they would sample when there is not a discharge. *See* General Permit Section XI (monitoring) section B, Qualifying Storm Event. RJN, Exh. E at 43. Plaintiff has not addressed how non-dischargers must file a technical report as opposed to an annual report verifying that there was no discharge from the facility.

V.    <u>CONCLUSION</u>.

Plaintiff has not pled any sufficient facts to provide the Court with enough factual content to support the First Claim for Relief for unlawful discharge from the facility. As set forth above, Plaintiff has only alleged threadbare, conclusory statements. Those conclusory statements are directly contradicted by the documentary evidence that Plaintiff cites to in its complaint. This Court must dismiss the First Claim for Relief, and force Plaintiff to re-plead it with sufficient facts to provide the Court sufficient factual content as to the first claim that there were any actual discharges either on a daily basis from May 2, 2023, or on the alternate basis that there were actual discharges during significant rain events that are undefined and undated.

The Second through Fifth Claims for Relief must be dismissed for failure to state a claim for relief unless Plaintiff can sufficiently plead there were any actual discharges from the facility, and force Plaintiff to re-plead as to how and why these claims for relief apply to a facility that has effectively precluded all stormwater discharge from 2021 to present. The Fifth Claim must be dismissed due to the failure of Plaintiff to include it in its March NOV letter to Defendants.

//

DATED: September 10, 2024

Respectfully submitted,

HARLAND LAW FIRM LLP

_/s/ Allison G. Jackson_
Allison G. Jackson

Attorneys for Defendants
KERNAN CONSTRUCTION CO.,
BEDROCK INVESTMENTS LLC,
SCOTT FARLEY and KURT KERNEN