# EXHIBIT 1

Law Office of William Carlon
437 Post Street, Napa, CA 94559
william@carlonlaw.com
(530) 514-4115

March 14, 2024

**VIA CERTIFIED MAIL**

Scott Farley
Kurt Kernen
Kernen Construction Co.
P.O. Box 1340
Blue Lake, CA 95525

Scott Farley
Kurt Kernen
Kernen Construction Co., Glendale Yard
2350 Glendale Drive
McKinleyville, CA 95519

Sandra Eve Kernen, Agent for Service
Bedrock Investments, LLC
801 Liscom Hill Road
McKinleyville, CA 95519

Re:   **NOTICE OF VIOLATIONS AND INTENT TO FILE SUIT UNDER THE FEDERAL WATER POLLUTION CONTROL ACT ("CLEAN WATER ACT") (33 U.S.C. §§ 1251 *et seq*.)**

Dear Scott Farley, Kurt Kernen, and Sandra Kernen:

Californians for Alternatives to Toxics ("CATs") provides this notice of violations of the Clean Water Act ("the Act") occurring at Kernen Construction Co.'s Glendale Yard located at 2350 Glendale Drive, in McKinleyville, California (the "Facility"). This letter is being sent to you as the responsible owners, officers and/or operators of the Facility. Unless otherwise noted, Kernen Construction Co., Bedrock Investments, LLC, Mr. Farley and Mr. Kernen shall hereinafter be collectively referred to as "Kernen Construction." CATs is a non-profit association dedicated to the preservation, protection and defense of the environment, wildlife and natural resources of California waters, including the waters into which Kernen Construction discharges polluted storm water.

On May 13, 2016, CATs provided notice to Kernen Construction of violations of the Act and the General Permit.[1] That letter detailed allegations of violations that occurred at the Facility between May 13, 2011 and May 13, 2016. On August 30, 2017, the Parties entered into a settlement agreement (the "Settlement") which resolved those allegations, as well as violations of the Act and Proposition 65 up to November 13, 2017. During the intervening compliance monitoring period, Kernen Construction repeatedly violated the Settlement and the Act in a variety of ways. CATs made repeated attempts to resolve the ongoing violations at the Facility

---

[1] Clean Water Act, 33 U.S.C. § 1251 *et seq*., and National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 91-13-DWQ, as amended by Order No. 92-12-DWQ, Order No. 97-03-DWQ, and Order 2014-0057-DWQ; amended by Order 2015-0122-DWQ & Order 2018-0028-DWQ.

Notice of Violation and Intent to File Suit
March 14, 2024
Page 2

without resorting to additional litigation, yet Kernen Construction refused to engage in those efforts in a meaningful way. On December 20, 2019, CATs provided notice to Kernen Construction of violations of the Act and the General Permit. That letter detailed allegations of violations that occurred at the Facility between November 14, 2017 and December 20, 2019. CATs filed a complaint against Kernen Construction on February 21, 2020, and judgment on those claims was entered in CATs' favor on September 20, 2021. The injunction ordered against Kernen Construction was in effect until May 1, 2023. This letter is intended to provide Kernen Construction, as well as the Environmental Protection Agency and the Chief Administrative Officer for the State Board, with notice of ongoing and continuous violations of the substantive and procedural requirements of the Clean Water Act 33 U.S.C. §§ 1251 *et seq* and the General Permit occurring from May 2, 2023 to the present.

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation (40 C.F.R. § 19.4) each separate violation of the Act subjects Kernen Construction to a penalty of up to $66,712 per day per violation for all violations occurring between May 2, 2023 and the present. In addition to civil penalties, CATs will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. §1365(a) and (d)) and such other relief as permitted by law. Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and fees, including attorneys' fees.

The Clean Water Act requires that sixty (60) days prior to the initiation of a citizen-enforcement action under Section 505(a) of the Act (33 U.S.C. § 1365(a)), a citizen enforcer must give notice of its intent to file suit. Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the Chief Administrative Officer of the water pollution control agency for the State in which the violations occur. *See* 40 C.F.R. § 135.2. As required by the Act, this letter provides statutory notice of the violations that have occurred, and continue to occur, at the Facility. 40 C.F.R. § 135.3(a). At the expiration of sixty (60) days from the date of this letter, CATs intends to file suit under Section 505(a) of the Act in federal court against Kernen Construction for violations of the Clean Water Act and the Permit.

**I.     Background.**

      **A.     The Clean Water Act.**

Congress enacted the CWA in 1972 in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. The Act prohibits the discharge of pollutants into United States waters except as authorized by the statute. 33 U.S.C. § 1311; *San Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1156 (9th Cir. 2002). The Act is administered largely through the NPDES permit program. 33 U.S.C. § 1342. In 1987, the Act was amended to establish a framework for regulating storm water discharges through the NPDES system. Water Quality Act of 1987, Pub. L. 100-4, § 405, 101 Stat. 7, 69 (1987) (codified at 33 U.S.C. § 1342(p)); *see also Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 840-41 (9th Cir. 2003) (describing the problem of storm water runoff and summarizing the Clean Water Act's permitting scheme). The discharge of pollutants without an NPDES permit, or in

Notice of Violation and Intent to File Suit
March 14, 2024
Page 3

violation of a permit, is illegal. *Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1145 (9th Cir. 2000).

Much of the responsibility for administering the NPDES permitting system has been delegated to the states. *See* 33 U.S.C. § 1342(b); *see also* Cal. Water Code § 13370 (expressing California's intent to implement its own NPDES permit program). The CWA authorizes states with approved NPDES permit programs to regulate industrial storm water discharges through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342(b). Pursuant to Section 402 of the Act, the Administrator of EPA has authorized California's State Board to issue individual and general NPDES permits in California. 33 U.S.C. § 1342

    **B.**    **California's General Permit for Storm Water Discharges Associated with Industrial Activities**

Facilities discharging, or having the potential to discharge, storm water associated with industrial activities that have not obtained an individual NPDES permit must apply for coverage under the General Permit by filing a Notice of Intent to Comply ("NOI"). General Permit, Standard Condition XXI.A. Facilities must file their NOIs before the initiation of industrial operations. *Id.* Facilities must strictly comply with all of the terms and conditions of the General Permit. A violation of the General Permit is a violation of the CWA.

The General Permit contains three primary and interrelated categories of requirements: (1) discharge prohibitions, receiving water limitations and effluent limitations; (2) Storm Water Pollution Prevention Plan ("SWPPP") requirements; and, (3) self-monitoring and reporting requirements.

    **C.**    **Kernen Construction's Glendale Yard Facility**

Kernen Construction is a construction company that operates a 37-acre industrial yard in Humboldt County where it recycles concrete, asphalt, and construction and demolition debris. Industrial operations at the Facility consist of all activities required to store and manufacture rock aggregate products, including vehicle and equipment storage and repair, storage of petroleum products, and the stock piling and storage of non-toxic materials, scrap metal, soil, and organic debris. The industrial activities at the Facility fall under Standard Industrial Classification ("SIC") Code 5093 and 142X, which includes SIC Codes 1422, 1423, and 1429.

Kernen Construction collects and discharges storm water associated with industrial activities at the Facility through a number of discharge points around the Facility's boundary. These discharges flow into Noisy Creek and Hall Creek, tributaries of the Mad River, which ultimately flows into the Pacific Ocean. Noisy Creek, Hall Creek and the Mad River are waters of the United States within the meaning of the Clean Water Act.

The General Permit requires Kernen Construction to analyze storm water samples for TSS, pH, and Oil and Grease. General Permit, Section XI.B.6. Facilities under SIC Code 5093 must also analyze storm water samples for Iron ("Fe"); Lead ("Pb"); Copper (Cu), Aluminum ("Al"); Zinc ("Zn"); and Chemical Oxygen Demand ("COD"). General Permit, Tables 1-2.

Historic lab results of storm water discharges from the Facility indicate chronic exceedances of TSS, COD, Al, Cu, Fe, Pb, and N+N in Kernen Construction's storm water discharges. However, additional pollutants are likely to be present in Kernen Construction's storm water discharges including, but not limited to, lead, acetone, pentachlorophenol, and polychlorinated biphenyls. The General Permit requires dischargers to analyze their storm water for all pollutants likely to be present. General Permit, Section XI.B.6.c.

**II.     Kernen Construction's Violations of the Act and Permit.**

Based on its review of available public documents, CATs is informed and believes that Kernen Construction is in ongoing violation of both the substantive and procedural requirements of the CWA and the General Permit. These violations are ongoing and continuous. Consistent with the statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, and with the terms of the Settlement, Kernen Construction is subject to penalties for violations of the Act since May 2, 2023.

**A.     Kernen Construction Discharges Storm Water Containing Pollutants in Violation of the General Permit's Discharge Prohibitions, Receiving Water Limitations and Effluent Limitations.**

Kernen Construction's storm water sampling results provide conclusive evidence of Kernen Construction's failure to comply with the General Permit's discharge prohibitions, receiving water limitations and effluent limitations. Self-monitoring reports under the Permit are deemed "conclusive evidence of an exceedance of a permit limitation." *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1988).

**1.     Applicable Water Quality Standards.**

The General Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance. General Permit, Discharge Prohibition III.C. The General Permit also prohibits discharges that violate any discharge prohibition contained in the applicable Regional Water Board's Basin Plan or statewide water quality control plans and policies. General Permit, Discharge Prohibition III.D. Furthermore, storm water discharges and authorized non-storm water discharges shall not adversely impact human health or the environment, and shall not cause or contribute to a violation of any water quality standards in any affected receiving water. General Permit, Receiving Water Limitations VI.A, VI.B.

Dischargers are also required to prepare and submit documentation to the Regional Board upon determination that storm water discharges are in violation of the General Permit's Receiving Water Limitations. General Permit, Special Condition XX.B. The documentation must describe changes the discharger will make to its current storm water best management practices ("BMPs") in order to prevent or reduce any pollutant in its storm water discharges that is causing or contributing to an exceedance of water quality standards. *Id*.


Notice of Violation and Intent to File Suit
March 14, 2024
Page 5

The California Toxics Rule ("CTR") is an applicable water quality standard under the Permit, violation of which is a violation of Permit conditions. *Cal. Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc.,* 2015 U.S. Dist. LEXIS 108314, *21 (E.D. Cal. 2015). CTR establishes numeric receiving water limits for toxic pollutants in California surface waters. 40 C.F.R. § 131.38. The CTR establishes the following numeric limits for pollutants discharged by Kernen Construction: Copper – 0.013 mg/L (maximum concentration); Lead – 0.065 mg/L (maximum concentration); Zinc – 0.12 mg/L (maximum concentration).

The *Water Quality Control Plan for the North Coast Region (Revised May 2011)* ("Basin Plan") also sets forth water quality standards and prohibitions applicable to Kernen Construction's storm water discharges. The Basin Plan identifies present and potential beneficial uses for the Mad River, which include municipal and domestic water supply, hydropower generation, agricultural supply, industrial service supply, navigation, wildlife habitat, warm freshwater habitat, cold freshwater habitat, warm and cold spawning, and contact and non-contact water recreation. The Basin Plan sets forth water quality objectives to protect these beneficial uses. For example, waters designated for use as domestic or municipal supply shall not contain concentrations of chemical constituents in excess of the limits specified in California Code of Regulations, Title 22, Chapter 15. Basin Plan, Section 3.3.3, pp. 3-3, 3-4. The primary maximum contaminant level for aluminum is 1.0 mg/L and the secondary maximum contaminant level for aluminum is 0.2 mg/L.

Waters that cannot support the identified beneficial uses are designated as "impaired" by the Water Board. Clean Water Act, section 303(d). The Water Board reviews all available water quality data on a waterbody to determine whether the waterbody should be listed as impaired. Due to numerous exceedances of the secondary maximum contaminant level – the applicable water quality objective – the Water Board has identified the Mad River Hydrologic Unit as impaired for aluminum. Final California 2020 Integrated Report (303(d) List). Discharges of storm water containing aluminum that exceed the secondary maximum contaminant level of 0.2 mg/L to the Mad River, and its tributaries, therefore cause or contribute to the continued listing of the Mad River HU as impaired for aluminum. Such discharges are in violation of the General Permit's Receiving Water Limitation, section VI.A.

    **2.**    **Applicable Effluent Limitations.**

Dischargers are required to reduce or prevent pollutants in their storm water discharges through implementation of best available technology economically achievable ("BAT") for toxic and nonconventional pollutants and best conventional pollutant control technology ("BCT") for conventional pollutants. General Permit, Effluent Limitation V.A. Conventional pollutants include Total Suspended Solids, Oil & Grease, pH, Biochemical Oxygen Demand and Fecal Coliform. 40 C.F.R. § 401.16. All other pollutants are either toxic or nonconventional. 40 C.F.R. §§ 401.15-16.

Under the General Permit, benchmark levels established by the EPA ("EPA benchmarks") serve as guidelines for determining whether a facility discharging industrial storm

Notice of Violation and Intent to File Suit
March 14, 2024
Page 6

water has implemented the requisite BAT and BCT. *Santa Monica Baykeeper v. Kramer Metals,* 619 F.Supp.2d 914, 920, 923 (C.D. Cal 2009); 2015 General Permit, Exceedance Response Action XII.A.

The following EPA benchmarks have been established for pollutants discharged by Kernen Construction: Total Suspended Solids – 100 mg/L; Oil & Grease – 15.0 mg/L; Chemical Oxygen Demand – 120 mg/L; Aluminum – 0.75 mg/L; Iron – 1.00 mg/L; Zinc – 0.26 mg/L; Lead – 0.26 mg/L; Nitrate plus Nitrite Nitrogen – 0.68 mg/L; and, Copper – 0.0332 mg/L.

### 3. Kernen Construction's Storm Water Sample Results

Kernen Construction's discharges of pollutants from the Facility have violated the discharge prohibitions, receiving water limitations and effluent limitations of the Permit, including discharges containing excessive concentrations of total suspended solids, oil and grease, chemical oxygen demand, aluminum, iron, zinc, copper, nitrate plus nitrite nitrogen, and lead.

Kernen Construction has done little to address the sources of these pollutants and has instead focused almost exclusively on retention. Kernen Construction's SWPPP suggests that storm water does not discharge from the Facility, except in extreme circumstances – though those are not defined in the SWPPP. However, when Kernen Construction does discharge, sample results of the discharges demonstrate that the storm water discharges associated with industrial activities and materials have violated and will violate the Permit's discharge prohibitions, receiving water limitations and effluent limitations set forth above. CATs is informed and believes that Kernen Construction has known that its storm water contains pollutants at levels exceeding General Permit standards since at least May 2, 2023.

CATs alleges that such violations occur each time storm water discharges from the Facility. Attachment B hereto, sets forth the specific rain dates on which CATs alleges that Kernen Construction has discharged storm water containing impermissible levels of TSS, COD, Al, Fe, Zn, Cu, pH, and N+N in violation of the General Permit. General Permit, Discharge Prohibitions III.C and III.D, Receiving Water Limitations VI.A, VI.B.

### 4. Kernen Construction Has Failed to Implement BAT and BCT

Dischargers must implement BMPs that fulfill the BAT/BCT requirements of the CWA and the General Permit to reduce or prevent discharges of pollutants in their storm water discharges. General Permit, Effluent Limitation V.A. To meet the BAT/BCT standard, dischargers must implement minimum BMPs and any advanced BMPs set forth in the General Permit's SWPPP Requirements provisions where necessary to reduce or prevent pollutants in discharges. *See* General Permit, Sections X.H.1-2.

Kernen Construction has failed to implement the minimum BMPs required by the General Permit, including: good housekeeping requirements; preventive maintenance requirements; spill and leak prevention and response requirements; material handling and waste

Notice of Violation and Intent to File Suit
March 14, 2024
Page 7

management requirements; erosion and sediment controls; employee training and quality assurance; and record keeping.  General Permit, Section X.H.1(a-g).

Kernen Construction has further failed to implement advanced BMPs necessary to reduce or prevent discharges of pollutants in its storm water sufficient to meet the BAT/BCT standards, including:  exposure minimization BMPs; containment and discharge reduction BMPs; treatment control BMPs; or other advanced BMPs necessary to comply with the General Permit's effluent limitations.  General Permit, Sections X.H.2.

Each day that Kernen Construction have failed to develop and implement BAT and BCT at the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a).  Kernen Construction have been in violation of the BAT and BCT requirements at the Facility every day since at least May 2, 2023

**5.  Kernen Construction Has Failed to Implement an Adequate Monitoring Implementation Plan.**

The General Permit requires dischargers to implement a Monitoring Implementation Plan.  General Permit, Section X.I.  As part of their monitoring plan, dischargers must identify all storm water discharge locations.  General Permit, Section X.I.2.  Dischargers must then conduct monthly visual observations of each drainage area, as well as visual observations during discharge sampling events.  General Permit, Sections XI.A.1 and 2.

Dischargers must collect and analyze storm water samples from two (2) storm events within the first half of each reporting year (July 1 to December 31) and two (2) storm events during the second half of each reporting year (January 1 to June 3).  General Permit, Section XI.B.  Section XI.B requires dischargers to sample and analyze during the wet season for basic parameters such as pH, total suspended solids ("TSS") and oil and grease ("O&G"), certain industry-specific parameters set forth in Table 2 of the General Permit, and other pollutants likely to be in the storm water discharged from the facility based on the pollutant source assessment.  General Permit, Section XI.B.6.   Dischargers must submit all sampling and analytical results via SMARTS within thirty (30) days of obtaining all results for each sampling event.  General Section XI.B.11.

Kernen Construction has failed to develop and implement an adequate Monitoring Implementation Plan.  These failures include failing to collect the required number of samples each reporting period, failing to identify all discharge locations at the Facility, and failing to adequately monitor and report all discharge locations at the Facility.

Each day that Kernen Construction has failed to develop and implement an adequate Monitoring Implementation Plan is a separate and distinct violation of the Act and Permit.  Kernen Construction has been in violation of the Monitoring Implementation Plan requirements every day since at least May 2, 2023.

Notice of Violation and Intent to File Suit
March 14, 2024
Page 8

### 6. Kernen Construction Has Failed to Develop and Implement an Adequate Storm Water Pollution Prevention Plan.

The General Permit requires dischargers to develop and implement a site-specific SWPPP. General Permit, Section X.A. The SWPPP must include, among other elements: (1) the facility name and contact information; (2) a site map; (3) a list of industrial materials; (4) a description of potential pollution sources; (5) an assessment of potential pollutant sources; (6) minimum BMPs; (7) advanced BMPs, if applicable; (8) a monitoring implementation plan; (9) annual comprehensive facility compliance evaluation; and (10) the date that the SWPPP was initially prepared and the date of each SWPPP amendment, if applicable. *See id.*

Dischargers must revise their SWPPP whenever necessary and certify and submit via the Regional Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") their SWPPP within 30 days whenever the SWPPP contains significant revisions(s); and, certify and submit via SMARTS for any non-significant revisions not more than once every three (3) months in the reporting year. General Permit, Section X.B.

CATs' investigation indicates that Kernen Construction has been operating with an inadequately developed or implemented SWPPP in violation of General Permit requirements. Kernen Construction has failed to evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary, resulting in the Facility's numerous effluent limitation violations. In addition, Kernen's SWPPP fails to identify all locations of storm water discharge from the Facility. Each day Kernen Construction failed to develop and implement an adequate SWPPP is a violation of the General Permit. The SWPPP violations described above were at all times in violation of Section X of the General Permit. Kernen Construction has been in violation of these requirements at the Facility every day since at least May 2, 2023.

### 7. Kernen Construction Has Failed to Comply with the Reporting Requirements of the General Permit.

The General Permit requires dischargers to submit an annual report certifying various pieces of relevant information relating to the facility's storm water management. General Permit XVI. Kernen Construction has failed to comply with this requirement by submitting Annual Reports that are inaccurate and fail to include all required information. For example, the 2022-2023 Annual Report states that there are zero discharge locations at the Facility; however, there are numerous discharge locations. The SWPPP acknowledges that if a storm event overwhelms the storm water containment system in the Southern Yard (also known as the Upper Yard), the Facility would discharge from the "sediment traps." More to the point, the Northern Yard (also known as the Lower Yard) discharges industrial storm water whenever it rains more than 0.25 inches in a 24-hour period. This industrial storm water is discharged from Kernen's Lower Yard directly into Noisy Creek at multiple locations.

Notice of Violation and Intent to File Suit
March 14, 2024
Page 9

**III.     Persons Responsible for the Violations.**

CATs puts Kernen Construction on notice that they are the persons and entities responsible for the violations described above.  If additional persons are subsequently identified as also being responsible for the violations set forth above, CATs puts Kernen Construction on formal notice that it intends to include those persons in this action.

**IV.     Name and Address of Noticing Parties.**

The name, address and telephone number of each of the noticing parties is as follows:

Patricia Clary, Executive Director
Californians for Alternatives to Toxics
600 F Street, Suite 3 #911
Eureka, CA 95521
(707) 834-4833

**V.     Counsel.**

CATs has retained legal counsel to represent it in this matter.  Please direct all communications to:

William Verick
Klamath Environmental Law Center
1125 Sixteenth Street, Suite 204
Arcata, CA 95521
(707) 630-5061
wverick@igc.org

William Carlon
Law Office of William Carlon
437 Post Street,
Napa, CA 94559
(530) 514-4115
william@carlonlaw.com

David Williams
Law Offices of David Williams
1839 Ygnacio Valley Road, Suite 351
Walnut Creek, CA 94598
(510) 847-2356
davidhwilliams@earthlink.net

Andrew L. Packard
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
(707) 782-4060
andrew@packardlawoffices.com

Brian Acree
Law Office of Brian Acree
95 3rd Street, Second Floor
San Francisco, CA 94103-3103
(510) 517-5196
brian@brianacree.com

Notice of Violation and Intent to File Suit
March 14, 2024
Page 10

## VI.   Conclusion

CATs believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit.  We intend to file a citizen suit under Section 505(a) of the CWA against Kernen Construction Company and their agents for the above-referenced violations upon the expiration of the 60-day notice period.  If you wish to pursue remedies in the absence of litigation, we suggest that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day notice period.  We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

Sincerely,

_____
William Carlon
Law Office of William Carlon
Counsel for Californians for Alternatives to Toxics

Notice of Violation and Intent to File Suit
March 14, 2024
Page 11

## SERVICE LIST

**VIA CERTIFIED MAIL**

    Michael S. Regan, Administrator
    U.S. Environmental Protection Agency
    1200 Pennsylvania Ave., N.W.
    Washington, D.C. 20460

    Martha Guzman Aceves, Regional Administrator
    U.S. Environmental Protection Agency, Region IX
    75 Hawthorne Street
    San Francisco, CA 94105

    Merrit Garland, U.S. Attorney General
    U.S. Department of Justice
    950 Pennsylvania Avenue, N.W.
    Washington, DC 20530-0001

    Eric Oppenheimer, Executive Director
    State Water Resources Control Board
    P.O. Box 100
    Sacramento, CA 95812

    Valerie Quinto. Executive Officer
    North Coast Regional Water Quality Control Board
    5550 Skylane Blvd, STE A
    Santa Rosa, CA 95402-1072

## ATTACHMENT A

**Notice of Intent to File Suit, Kernen Construction**
**Significant Rain Events, May 2, 2023 – March 14, 2024**

**2023**

October 10, 2023
October 14, 2023
October 16, 2023
November 1, 2023
November 3, 2023
November 6, 2023
November 15, 2023
November 19, 2023
December 2, 2023
December 3, 2023
December 7, 2023
December 8, 2023
December 18, 2023
December 19, 2023
December 28, 2023
December 30, 2023
December 31, 2023

**2024**

| | |
|---|---|
| January 1, 2024 | February 16, 2024 |
| January 3, 2024 | February 18, 2024 |
| January 7, 2024 | February 19, 2024 |
| January 9, 2024 | February 20, 2024 |
| January 10, 2024 | February 21, 2024 |
| January 11, 2024 | March 1, 2024 |
| January 13, 2024 | March 2, 2024 |
| January 14, 2024 | March 3, 2024 |
| January 17, 2024 | March 4, 2024 |
| January 20, 2024 | March 5, 2024 |
| January 21, 2024 | March 6, 2024 |
| January 22, 2024 | March 11, 2024 |
| January 23, 2024 | March 12, 2024 |
| January 25, 2024 | |
| January 28, 2024 | |
| February 1, 2024 | |
| February 2, 2024 | |
| February 3, 2024 | |
| February 5, 2024 | |
| February 6, 2024 | |
| February 8, 2024 | |
| February 15, 2024 | |

\* Dates gathered from publicly available rain and weather data collected at stations located near the Facility.