1   Allison G. Jackson, State Bar No. 157078
    HARLAND LAW FIRM LLP
2   212 G Street, Suite 201
    Eureka, California 95501
3   (707) 444-9281 telephone
    (707) 445-2961 facsimile
4
    Attorneys for Defendants
5   KERNAN CONSTRUCTION CO.,
    BEDROCK INVESTMENTS LLC,
6   SCOTT FARLEY and KURT KERNEN

7

8

9

10                  UNITED STATES DISTRICT COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12  CALIFORNIANS FOR ALTERNATIVES TO        Case No. 4:24-cv-04067-YGR
    TOXICS,
13                                          NOTICE OF MOTION AND MOTION BY
                    Plaintiff,              DEFENDANTS KERNEN
14                                          CONSTRUCTION CO., BEDROCK
    v.                                      INVESTMENTS LLC, SCOTT FARLEY,
15                                          and KURT KERNEN TO DISMISS
                                            PLAINTIFF CALIFORNIANS FOR
16  KERNEN CONSTRCUTION CO.;                ALTERNATIVES TO TOXICS'
    BEDROCK INVESTMENTS LLC; SCOTT          COMPLAINT FOR DECLARATORY
17  FARLEY; and KURT KERNEN,                RELIEF AND INJUNCTIVE RELIEF AND
                                            CIVIL PENALTIES (F.R.C.P. 12(b)(1) and
18                  Defendants.             12(b)(6)

19                                          Date:        November 12, 2024
                                            Time:        2:00 p.m.
20                                          Courtroom:   1, 4th Floor
                                            Oakland Courthouse
21                                          1301 Clay Street
                                            Oakland, CA 94612
22                                          Judge: Honorable Yvonne Gonzalez Rogers
                                            Trial Date: TBD
23  _____/       Action Filed: July 5, 2024

24

25

26

27

28

---

1

<u>TABLE OF CONTENTS</u>

2

NOTICE OF MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

3   I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

4   II.    FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5   III.   APPLICABLE STANDARDS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

6   IV.   ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

7        A.    The Motion to Dismiss by Defendants Should Be Granted on the Ground That the
8              Amended Complaint Fails to Allege Facts Sufficient to State a Claim Against
              Either Defendant for the First Claim for Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

9             1.    Facts Pled in First Claim for Relief Regarding Alleged Discharge at the
10                 Facility. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

11             2.    The Official Public Records Referred to in Plaintiff's Brief Establish That
                 There Are No Discharge Locations on the SWPPP, That the Old Discharge
                 Locations Have Been Sealed Off since 2021, and That There Has Not
12                 Been Any Discharge since the Old Locations Were Sealed Off. . . . . . . . 13

13             3.    Plaintiff Has Pled No Dates Regarding Discharges. . . . . . . . . . . . . . . . . . 16

14             4.    Plaintiff Has Pled No Facts at All of Locations Other than the Sealed-Off
15                 Upper Yard for Alleged Discharges. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

             5.    Plaintiff Has Pled No Facts as to Noisy Creek Being a Navigable Water
16                 Covered by the Clean Water Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

17        B.    Second Claim for Relief  – SWPPP. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18        C.    Third Claim for Relief – BAT/BCT/BMP. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

19        D.    Fourth Claim for Relief – Monitoring/Sampling. . . . . . . . . . . . . . . . . . . . . . . . . . 24

20        E.    Fifth Claim for Relief – Failure to Submit a Certified Annual Report. . . . . . . . . 24

21   V.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

22

23

24

25

26

27

28

1

<u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).............................................................. 9, 16, 17

4

5

*Balistreri v. Pacifica Police Department,*
    901 F.2d 696 (1990).................................................................. 8

6

*Bell Atl. Corp v. Twombly,*
    550 U.S. 544 (2007)....................................................... 9-11, 15, 16

7

8

*Conley v. Gibson,*
    355 U.S. 41 (1957)..................................................................... 9

9

*De La Cruz v. Tormey,*
    582 F.2d 45 (1978)..................................................................... 9

10

*Ileto v. Glock, Inc.,*
    349 F.3d 1191 (2003)................................................................. 8

11

12

*In re Gilead Scis. Sec. Litig.,*
    536 F.3d 1049 (2008)................................................................. 9

13

*In Re Russell,*
    76 F.3d 242 (1996)..................................................................... 9

14

15

*Mack v. South Bay Beer Distributors, Inc.,*
    798 F.2d 1279 (1986)................................................................. 9

16

*Mullis v. United States Bankruptcy Court,*
    828 F.2d 1385 (1987)................................................................. 9

17

*Myvett v. Litton Loan Servicing,* LP,
    2010 U.S. Dist. LEXIS 18753 (2010). ....................................... 16, 17

18

19

*Sackett v. EPA,*
    598 U.S. 651 (2023).................................................................. 18

20

*Sparks-Magdaluyo v. New Penn Fin.,* LLC,
    2017 U.S. Dist. LEXIS 199196 (2017). ........................................ 9

21

22

*Telesaurus VPC, LLC v. Power,*
    623 F.3d 998 (2010)............................................................. 16, 17

23

24

25

<u>Statutes</u>
33 U.S.C. § 1251, *et seq*.............................................................. 18

26

27

<u>Rules</u>
Federal Rules of Civil Procedure,
    Rule 11............................................................................... 15

28

Federal Rules of Civil Procedure,
      Rule 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 24

Federal Rules of Civil Procedure,
      Rule 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Regulations</u>

Code of Federal Regulations,
      Title 33, Section 328.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Code of Federal Regulations,
      Title 40, Section 120.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

<u>Other Authorities</u>

Revised Definition of "Waters of the United States",
      88 Fed. Reg. 3004-3144 (Jan. 18, 2023)
            (to be codified at 33 C.F.R. pt. 328 and 40 C.F.R. pt. 120). . . . . . . . . . . . . . . . 18

Revised Definition of "Waters of the United States"; Conforming,
      88 Fed. Reg. 61964-61969 (Sept. 8, 2023)
            (to be codified at 33 C.F.R. pt. 328 and 40 C.F.R. pt. 120). . . . . . . . . . . . . . . . 18

NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on Tuesday, November 12, 2024, at 2:00 p.m. in Courtroom 1, 4th Floor, of the above-entitled Court located at 1301 Clay Street, Oakland, CA 94612, Defendants KERNEN CONSTRUCTION COMPANY, BEDROCK INVESTMENTS LLC, SCOTT FARLEY, and KURT KERNEN will move, and do hereby move, this Court under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiff's Amended Complaint for Declaratory and Injunctive Relief and Civil Penalties on the grounds that Plaintiff has failed to state claims upon which relief can be granted. Plaintiff's allegations against Defendants fail to allege any factual content for the Court to draw the reasonable inference that Defendants were liable for the misconduct alleged any of the Five Claims for Relief. This motion is based on this Notice of Motion and Motion to Dismiss, the below Memorandum of Points and Authorities, the Declaration of Allison G. Jackson filed concurrently herewith, the Request for Judicial Notice filed concurrently herewith, all pleadings and papers on file in this action, and on such oral and written evidence as maybe submitted by counsel at any hearing on said motion. By way of this motion, Defendants seek an order of dismissal for all Five Claims for Relief.

I.      INTRODUCTION**.**

This is the third suit brought by California Alternative to Toxics ("CATS") against Defendants. The first suit brought in 2016, 4:16-cv-04007-YGR, was resolved by way of a consent decree. The consent decree, required Defendants to follow requirements demanded by Plaintiff and its "consultant" who was neither a Qualified Stormwater Practitioner ("QSP") nor a Qualified Industrial Stormwater Practitioner ("QISP"). The results from following Plaintiff's demands during this period actually raised the Numeric Action Levels ("NALs").

At the end of the 2016 matter, Plaintiff sent a Notice of Violation letter to Defendants regarding the increase of their NALS during the time they were following Plaintiff's required changes. Defendants notified Plaintiff that they were going to a status of being a no-discharge facility and would not consider following the failed requirements demanded again by Plaintiff. In response to Defendants informing Plaintiff that they were going to eliminate all stormwater discharge with design reduction BMPs, Plaintiff filed its second lawsuit, 4:20-cv-01348-YGR. ,

1  Defendants then made the decision that the only way to stop the current litigation and avoid all

2  future litigation was to admit everything in CATS' second  complaint and immediately

3  implement design reduction BMPs designed to eliminate all storm water discharge from

4  Defendants' facility as the only viable way to end a seemingly never-ending cycle of lawsuits.

5  Those design reduction BMPs went into effect by mid-2021.

6      Defendants sealed off their four discharge locations and held storm water on site allowing

7  it to dissipate into the soil for the rainy seasons of 2021-2022, 2022-2023, and 2023-2024.

8  *Defendants remained in compliance during the time the injunction was active and thereafter.*

9  Defendants remained under the injunction until May 1, 2023.

10     Defendants' Stormwater Pollution Prevention Plan ("SWPPP") dated February 2022,

11  provides that all of the previous discharge locations were sealed/plugged at the facility in 2021

12  and that all stormwater from that time on remains on site to percolate back into the ground. RJN,

13  Exh. A, section 2.1.4 at 6-7 and appendix A at 38-42. That SWPPP remains in effect today.

14     Defendants' Annual Reports, (official records with the State Water Resources Control

15  Board) indicate that the facility has "eliminated" all stormwater discharge during the 2021-2022

16  season, the 2022-2023 season, and 2023-2024 season. RJN, Exh. B-D.

17     Plaintiff's Initial Complaint ("IC") the First Claim for Relief was based upon the claim

18  that Defendants have been discharging stormwater into Waters of the United State every day

19  since the 2021 injunction expired without any sufficient, much less plausible facts that any

20  discharge ever occurred. It alleged that Defendants discharged during "significant rain events"

21  with no dates nor definition of what that term means. Plaintiff's only "facts" regarding discharge

22  was based upon the 2022 SWPPP which states that there are no discharge locations. The Annual

23  Reports from the same records show no discharge from the facility during the time frame of the

24  IC. Plaintiff provided nothing more than conclusory statements without any factual content that

25  there are any discharge locations in the SWPPP or that there are daily stormwater discharges

26  from the day the injunction expired. Plaintiff made conclusory statements without any plausible

27  factual content regarding discharge from the sealed and plugged former sites in the upper yard or

28  the lower yard. The dates in the IC were speculative, and contradictory. There were no facts at all

alleged regarding locations of other discharge points not identified in the 2022 SWPPP.

Plaintiffs did not plead any facts as to why it would be "necessary" for Defendants to amend and update their SWPPP when there were no facts regarding actual discharge and when the records show that Defendants have *eliminated* storm water discharge (Second Claim). Plaintiff did not provide any facts as to why it would be necessary for Defendants to revise their BMPs when they reduced discharge to the point it was *eliminated* at the site. (Third Claim). Plaintiff did not provide any facts as to why it would be necessary to sample stormwater discharge when discharge has been *eliminated* (Fourth Claim). The Fifth Claim, (failure to file a Technical Report) was not in Plaintiff's Notice of Violation, so that claim was barred.

Defendants filed a Motion to Dismiss the IC (ECF Doc 17) on the basis that the IC failed to plead sufficient plausible facts that would allow this Court to draw the reasonable inferences that Defendants were liable for the misconduct alleged. Plaintiff's threadbare recitals of the elements of a claim for relief, supported by mere conclusory statements, did not suffice. In response to that Motion to Dismiss, Plaintiff's filed an Amended Complaint ("FAC"). It added two new paragraphs regarding alleged discharge (¶¶106, 107) and substituted an entirely new Fifth Cause of Action. Plaintiff had the opportunity to plead facts regarding the deficiencies pointed out in the Motion to Dismiss (ECF Doc 17). It did not. This Court should grant this Motion to Dismiss to force Plaintiff to plead sufficient facts to meet federal pleading standards.

II.   FACTS.

In 2016, Plaintiffs filed a Clean Water Act ("CWA") complaint against defendants asserting that they had discharges that were noncompliant with BMPs amongst other things in their discharge from their facility (4:16-cv-04007-YGR). That case resulted in a consent decree. The consent decree required Defendants to follow Plaintiff's specific directives in their management practices regarding stormwater discharge from their facility.

In 2020, after completion of the consent decree between Plaintiff and Defendants in the 2016 matter, Plaintiff filed another CWA complaint (4:20-cv-01348-YGR), basing its CWA violations on, amongst other things, that Defendants violated the CWA by their discharge while following the consent decree directives, irrespective of the fact that such BMPs were required by

1  CATS in the consent decree in the earlier 2016 matter. Defendants made the choice to take their

2  facility to a status of eliminating all stormwater discharge. In order to effectuate this plan, and

3  terminate the new litigation, Defendants admitted liability, and the court placed them under an

4  injunction. Defendants then went to a no-discharge status during the 2021-2022 rainy season, and

5  maintained that status during the 2022-2023 rainy season, and the 2023-2024 rainy season. RJN,

6  Exh. A, section 2.1.4 at 6-7 and appendix A at 38-42; Exh. B-D.

7        During the time Defendants were under an injunction in 4:20-cv-01348-YGR, there were

8  no violations of the injunction. The injunction ended May 2, 2023.

9        During the 2022 rainy season, Defendants filed a new SWPPP ("2022 SWPPP"). RJN,

10 Exh. A; and see Amended Complaint ¶¶ 101 and 104. The 2022 SWPPP states in section 2.1.4

11 that all previous discharge locations in the upper yard were sealed and plugged and renamed as

12 observation locations; it also states there were no discharge locations in the lower yard. The

13 SWPPP includes, among other elements: (1) the facility name and contact information; (2) site

14 maps; (3) a list of industrial materials; (4) a description of potential pollution sources; (5) an

15 assessment of potential pollutant sources; (6) minimum BMPs; (7) advanced BMPs, if

16 applicable; (8) a monitoring implementation plan; (9) an annual comprehensive facility

17 compliance evaluation; and (10) the date that the SWPPP was initially prepared and the date of

18 each SWPPP amendment, if applicable. RJN, Exh. A, section 2.1.4 at 6-7.

19       Defendants filed Annual Reports under their General Permit for years 2021-2022, 2022-

20 2023, and 2023-2024 confirming they eliminated discharge. RJN, Annual Reports, Exh. B-D.

21       On July 5, 2024, Plaintiff filed the current complaint alleging unlawful discharges from

22 the day that the injunction ended in the 2020 matter (i.e., May 2, 2023) with the sole factual basis

23 of unlawful discharge based upon the 2022 SWPPP. Amended Complaint ¶¶ 101 and 103.

24       III.    <u>APPLICABLE STANDARDS</u>.

25       A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged

26 in a complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). A Rule 12(b)(6)

27 motion is proper when there is either "a lack of cognizable legal theory" or "the absence of

28 sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police*

1    *Department*, 901 F.2d 696, 699 (9th Cir. 1990); see also, *Conley v. Gibson*, 355 U.S. 41, 45–46

2    (1957); *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). To survive a motion to dismiss

3    for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6),

4    a plaintiff must make a "short and plain statement" providing "enough facts to state a claim for

5    relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 550, 570 (2007)

6    ("*Twombly*") *quoting* Fed. R. Civ. P. 8(a)(2). Plaintiff must proffer more than a statement that is

7    merely consistent with a valid theory of recovery. *Id.* at 557. Rather, the statement must include

8    "enough factual matter (taken as true) to suggest" a right to relief. *Id.* at 556. The statement must

9    have "enough heft to show that the pleader is entitled to relief" and must "raise a right to relief

10   above a *speculative* level." *Id.*

11   "Detailed factual allegations" are not required, but the Rule does call for sufficient factual

12   matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

13   (2009) *quoting Twombly*, 550 U.S. at 555, 570 (2007). "A claim has facial plausibility when the

14   plaintiff pleads factual *content* that allows the court to draw the reasonable inference that the

15   defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a

16   cause of action, supported by mere conclusory statements, do not suffice." *Id.* Although the court

17   should accept the plaintiff's allegations as true and draw all reasonable inferences in favor of the

18   plaintiff in deciding whether the plaintiff has stated a claim, the court should *not* accept as true

19   "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

20   inferences." *See in re Gilead Scis. Sec. Litig.* , 536 F.3d 1049, 1055 (9th Cir. 2008); *see also*

21   *Ashcroft*, 556 U.S. at 678 (no threadbare recitals of the elements supported by mere conclusory

22   statements).

23   Facts subject to judicial notice may be considered by a court on a motion to dismiss. *In*

24   *Re Russell*, 76 F.3d 242, 244 (9th Cir. 1996); *see also Sparks-Magdaluyo v. New Penn Fin.*,

25   LLC, 2017 U.S. Dist. LEXIS 199196, at *4 (N.D. Cal. 2017). A court may do so without

26   converting the motion into one for summary judgment. *See Mullis v. United States Bankruptcy*

27   *Court*, 828 F.2d 1385, 1388 (9th Cir. 1987); *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d

28   1279, 1282 (9th Cir. 1986) ("court may properly look beyond the complaint to matters of public

1  record").

2  IV.   <u>ANALYSIS</u>.

3      Defendants' Motion to Dismiss the Amended Complaint should be granted on the ground

4  that the allegations in Plaintiff's complaint do not satisfy the federal pleading requirements.

5  Plaintiff alleges only conclusory statements that there were/are discharges from Defendants'

6  facility into Waters of the United States. Plaintiff alleges "Defendants' 2022 SWPPP," identifies

7  discharge locations in both the upper yard (Amended Complaint ¶ 101) and in the lower yard

8  (Amended Complaint ¶ 103).

9      FAC  ¶101 alleges that the 2022 SWPPP states that Defendants have discharge locations

10  in the upper yard that *may* discharge. A review of the official record of the 2022 SWPPP

11  contradicts this statement. More fully discussed below, the official records from the State Water

12  Board referred to by Plaintiff actually say there are no current discharge locations at Section

13  2.4.1.2. ( RJN, Exh. A, at 7.)

14      The 2022 SWPPP cited in FAC ¶101 shows there are no existing discharge locations, and

15  that they have been sealed off prior to 2022. There are no factual allegations that everyday

16  beginning May 2, 2023, were part of any historically significant wet season. Nor are facts alleged

17  that everyday beginning May 2, 2023, the former discharge points were intentionally opened. Nor

18  are facts alleged that the sediment traps were overwhelmed each day resulting in a failure

19  allowing and resulting in daily discharge from the sediment traps.

20      FAC ¶103 alleges the 2022 SWPPP states that stormwater from the lower yard is

21  "captured by vegetated swales."  FAC ¶106 states that Defendants' neighbors have documented,

22  repeatedly, discharge of polluted stormwater from the Lower Yard into Noisy Creek. There are

23  no factual allegations to support a conclusory statement that there was discharge from the lower

24  yard at all nor where they are located in the lower yard nor any other factual content nor even

25  how the unidentified neighbor could determine a "discharge" of stormwater. *Twombly*, 550 U.S.

26  at 555, 570. ¶107 says that "Plaintiff's representatives have sampled discharges from the lower

27  yard, without any names, locations to identify it is the lower yard, nor dates for this alleged

28  discharge/discharge, nor any facts regarding the purported "sampling."  The 2022 SWPPP at

1    section 2.4.1 and the site maps state this stormwater is held in a holding pond before being

2    pumped to the upper yard infiltrators. (See RJN A, Appendix A, Site Map North Yard.)

3    Defendants' Annual Reports, which are also part of the same official records, also state that there

4    was no discharge from the facility at all (Annual Report 2021-2022, 2022-2023, and 2023-2024,

5    RJN B, C, D). There is *nothing* else alleged factually in the FAC to support the threadbare,

6    conclusory allegation of discharge in the FAC other than there are discharge locations in the

7    SWPPP in either the upper or lower yard. The addition of ¶106 and ¶107 in the FAC does not

8    cure the defects in the pleading because each is unsupported by any facts as to "where" and

9    "when" and "who."  Nor any facts regarding how unnamed neighbors would even know that

10   what they saw was a discharge of stormwater. These two paragraphs are simply threadbare

11   assertions without any supporting facts. Plaintiffs has not pled any factual *content* that allows this

12   court to draw the reasonable inference that the Defendants have discharged any stormwater at all.

13   *See Twombly*, 550 U.S. at 555, 570. Plaintiff's threadbare recitals of the elements of a claim for

14   relief, supported by mere conclusory statements, do not suffice. RJN, Exh. A-D.

15       There are no dates in the FAC regarding when a discharge occurred from the sealed off

16   observation locations. Plaintiff alleges that stormwater is discharged everyday from May 2, 2023,

17   and then alleges discharge on "significant rain events" which is not defined. There is no factual

18   content alleged to allow this Court to determine that it is plausible that it rained every day from

19   May 2, 2023, nor what a "significant rain event" is and what dates that occurred.

20       There are no factual allegations of any other discharge locations at the facility other than a

21   belief that others *may* exist. There are no facts to support this conclusory threadbare assertion.

22   The addition of the new ¶106 and ¶107 in the FAC does nothing to cure the initial problem

23   because both are also a threadbare conclusions without any supporting facts nor identification of

24   where and when, nor how this claim could be determined and this was after Plaintiff amended its

25   initial complaint after this was pointed out in ECF 17. Plaintiff still didn't provide factual *content*

26   that allows this court to draw the reasonable inference that the Defendants have discharged any

27   stormwater at all.

28       The second through fifth claims for relief fail to state a claim for relief as they are all

based upon the factually bereft premise that Defendants are actively discharging during the asserted time frame. There are no facts alleged regarding the Second Claim for Relief (failure to update the 2022 SWPPP) as to why it could be necessary to update an SWPPP when the facility's current plan has eliminated all discharges from the facility. Nor are there sufficient facts pled to support the Third Claim for Relief (failure to use BMPs to prevent or minimize discharge) when there are no discharge from the facility, nor to support the Fourth Claim for Relief (failing to have an adequate monitoring plan regarding discharges) when there is no discharge from the facility. Nor are there sufficient facts nor cognizable claim for relief to support the new Fifth Claim for Relief (discharger failing to file annual reports for discharges) when there is no discharge from the facility and no facts to support the claim that there is discharge on any day from May 2, 2024 to the filing of the Amended Complaint.

    A.    <u>The Motion to Dismiss by Defendants Should Be Granted on the Ground That the Amended Complaint Fails to Allege Facts Sufficient to State a Claim Against Either Defendant for the First Claim for Relief.</u>

    1.    <u>Facts Pled in First Claim for Relief Regarding Alleged Discharge at the Facility.</u>

Allegations pled in support of the First Claim for Relief that Defendants discharge in violation of the General permit:

During rain events, storm water with pollutants is discharged from Defendants facility into Noisy Creek. FAC ¶89. The 2022 SWPPP states that if storm water collection system were to reach capacity, the upper yard would discharge from several points at the south end of the upper yard. FAC ¶101. The 2022 SWPPP states that stormwater from the lower yard is captured in vegetated swales. FAC ¶103. Plaintiff is informed and believes that the facility discharges storm water associated with industrial activities from additional points not identified on the 2022 SWPPP. FAC ¶104. Storm water associated with industrial activities generated within the lower yard discharges into Noisy Creek. FAC ¶105. Defendants' neighbors have documented, repeatedly, discharges of polluted storm ¶106¶. Plaintiff's representatives have sampled discharges in the lower yard...¶107..Noisy creek is a Water of the United States. FAC ¶110. Since at least May 2, 2023, Defendants have discharged stormwater polluted with sediment from the

1   facility to Hall Creek and Noisy Creek. FAC ¶124. Plaintiff is informed and believes that during

2   every significant rain event, storm water flowing from the facility becomes contaminated and

3   flows from the facility into Hall Creek and Noisy Creek. FAC ¶ 125. Everyday since at least May

4   2, 2023, Defendants have discharged polluted storm water from the facility. FAC ¶133.

5       2.   The Official Public Records Referred to in Plaintiff's Brief
             Establish That There Are No Discharge Locations on the SWPPP,
6            That the Old Discharge Locations Have Been Sealed Off since
             2021, and That There Has Not Been Any Discharge since the Old
7            Locations Were Sealed Off.

8       The State Water Board official records specifically referred to by Plaintiff for the site

9   show that there are no active or open discharge locations as alleged in the FAC in paragraphs 89,

10  101, 103, 104, 105, 106, 107, 124, and 133. Defendants' Request for Judicial Notice for the 2022

11  SWPPP, which is the sole factual content support for discharge for the upper yard and directly

12  referenced in ¶101, provides the former discharge locations have been sealed/plugged and are

13  now observation locations, the stormwater is held onsite, and the Appendix map shows that there

14  are no discharge locations at the facility:

15      **2.1.4.2 Description of Existing Site Drainage Areas**
        "Stormwater discharges from the southern yard have been significantly limited by
16      the installation of an infiltration network spanning the southeast and southern
        perimeter. The infiltration network is approximately 1,000 feet long and
17      comprises two separate trenches that nearly meet north and east of former
        discharge location SL-2 (See Figure 3 in Appendix A). The trenches are backfilled
18      with gravel and remain pervious on the surface. *Sediment traps that were formerly
        discharge locations and new settling traps located west of the storage building at
19      the facility have been plumbed to drain into the infiltration trenches. If the
        sediment traps become full, the water will be pumped out and placed in the
20      stormwater retention area located in the northern yard.* The locations and sizes of
        the existing sediment traps coincided with already low areas along the southern
21      yard boundary and allowed space given the constraints of materials storage
        operations. The traps were not formerly designed. *If during the course of a
22      historically significant wet season, the infiltration trenches were to reach
        capacity, stormwater would backflow into the sediment traps. Although the
23      discharge pipes from the traps have been plugged, if a storm event overwhelmed
        the system discharge would occur from the sediment traps.* Former discharge
24      locations from the southern yard are now observation locations."

25      "Vegetated swales with small earthen sediment traps and rock check
        dams have been constructed on the east, north, and west sides of the stockpile.
26      The earthen and rock check dams promote some amount of infiltration and
        sediment settling..."

27  RJN, Exh. A at 7.

28

1

2

3

4

5

### 5.6.2 Sampling Locations

Sampling locations include locations where industrial activity impacted stormwater discharges from the site. Discharge reduction BMPs have been implemented at both the southern and northern yards that are anticipated to cease discharges from those areas. Former discharge locations SL-1 through SL-4 are now "observation locations" (OL-#). If a discharge is observed from one of these locations a sample of the discharge will be collected. The observation locations are shown on the site maps in Appendix A and are included in Table 5.1. RJN, Exh. A at 26 and 37.

6

7

Appendix A (the facility site maps) shows no discharge locations in the upper yard on page 41, nor in the lower yard on page 42. RJN, Exh. A.

8

9

10

The 2021-2022, 2022-2023, and 2023-2024 Annual Reports from the water board, which Defendants have requested Judicial Notice of, show no discharges at all from the facility from 2021 to present. RJN, Exh. B-D.

11

12

13

14

15

16

17

Including ¶101, the FAC is threadbare and conclusory regarding any discharge after 2021from the facility; nothing from May 2023 through July 2024. There are no existing discharge locations in the upper yard, and all prior discharge locations have been plugged or sealed per the document referred to in ¶101. There are no facts alleged that each day from May 2, 2023 on was an historical rain event, nor that such overwhelmed the system, nor that water did not get pumped to holding ponds, nor that the system was overwhelmed resulting in a failure. See §2.4.1.2, 2022 SWPPP, RJN, Exh. A at 7.

18

19

20

21

22

23

24

25

26

27

28

There are no "factual" allegations of discharge as to the lower yard in the FAC at all to provide factual content that allows this Court to draw the reasonable inference that the defendants are liable for the misconduct alleged. The only references to the lower yard in the FAC are ¶¶ 103, 105, 106 and 107. The 2022 SWPPP referred to in ¶ 101, and the maps contained in that 2022 SWPPP, show no discharge locations described nor mapped at all in the lower yard. All stormwater is held onsite in a holding pond, and there were vegetated swales installed along the perimeter of the lower yard per the 2022 SWPPP to infiltrate stormwater onsite and into the soil. The complaint pleads absolutely no facts of the failure of this swale and holding pond resulting alleged discharge on any day. If there is an unnamed neighbor (¶106) who has located an unmapped discharge location and has sampled that "discharge" certainly Plaintiff can allege the name, date and the precise location of where it occurred in the lower yard and how

1    that unnamed neighbor could determine that it was a discharge and it was stormwater. *See*

2    *Twombly*, 550 U.S. at 555, 570.

3           The FAC is utterly silent as to any facts, sufficient to pass federal pleading standards, that

4    there are *other* unnamed discharge points at the facility. *See Twombly*, 550 U.S. at 555, 570.

5           Plaintiff has not pled that any or all of  the sealed/plugged observation locations in the

6    upper yard were intentionally opened on May 2, 2023, and everyday thereafter, or on significant

7    (undated) rain events (see below). Nor has Plaintiff pled facts that the sediment traps were

8    overwhelmed by daily historically significant rain events. In fact, ¶101 seems specifically

9    phrased to avoid Plaintiff's problem with the lack of any facts in support of the conclusory

10   statement of discharges, even though Plaintiff has cited to the Defendants' 2022 SWPPP, which

11   contradicts this, as do all the official Annual Reports.

12          Plaintiff has both the official 2022 SWPPP and Annual Reports since they have referred

13   to the SWPPP in the FAC confirming "no discharge" locations nor discharge from any

14   observation location during the pendency of the earlier injunction through the time alleged in the

15   FAC. There is *nothing* else alleged factually in the current FAC to support the threadbare

16   conclusory allegation of discharge, other than there are "discharge locations" in the 2022 SWPPP

17   and that on unknown dates, unknown people or person saw a discharge. There are no facts to

18   support ¶¶106 and 107 and ¶101 is directly contradicted by the actual 2022 SWPPP and the

19   Annual Reports. The first claim for relief must be dismissed with leave to amend to force

20   Plaintiff to plead sufficient facts to provide factual content for this Court to determine that there

21   are either: 1) active discharge locations (both in the upper and lower yards) that are new

22   locations; or 2) old discharge locations that have been opened; or 3) that any sediment traps were

23   overwhelmed resulting in an actual discharge from the facility on either: a) everyday since May,

24   2, 2023; or b) on unnamed, undefined "significant rain events" from May 2, 2023 to present.

25   Plaintiff cannot do so consistent with Federal Rule Civ. Proc., Rule 11.[1]

26

27          [1] Plaintiff alludes to a NOV letter to Defendants by the State Water Board in paragraphs
     92, 93 and 97. Plaintiff is well aware that the purported letter dealt only with a Notice of
28   Violation of Water Code Section 13267 (NOV) dated May 21, 2024, and was limited to potential
     Waters of the State, to wit, the Porter-Cologne Water Act and State Water Code 13267 and

1          3.      Plaintiff Has Pled No Dates Regarding Discharges.

2          Plaintiff's FAC does not specify any dates on which Defendants were engaged in conduct

3    which allegedly violated the CWA by unlawful discharges. Rather, Plaintiff only generally

4    alleges a date range as to the alleged acts and/or omissions of all of the "Defendants." *See e.g.*,

5    FAC ¶89 (during rain events); ¶ 124 (since May 2, 2023); ¶125 (during significant rain events);

6    and ¶133 (everyday since May 2, 2023). These conclusory "date range" allegations against "all

7    defendants" appear to be an attempt to avoid the lack of factual support of their threadbare

8    conclusory allegations, which are in contradiction to the official records.

9          Plaintiff's failure to specify the dates on which Defendants allegedly engaged in conduct

10   which violated the CWA does not meet federal pleading standards. *See e.g., Myvett v. Litton*

11   *Loan Servicing*, LP, 2010 U.S. Dist. LEXIS 18753, *4 (N.D.Cal. Mar. 3, 2010) (statute of

12   limitations case); *Ashcroft v. Iqbal*, 556 U.S. at 663 (The complaint must contain "sufficient

13   factual matter, accepted as true, to state a claim to relief that is plausible on its face. ... A claim

14   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

15   reasonable inference that the defendant is liable for the misconduct alleged."); *see also*

16   *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

17         Plaintiff states that it is informed and believes that, during every significant rain event,

18   storm water flowing from the facility becomes contaminated, flowing from the facility into Hall

19   Creek and Noisy Creek. FAC ¶125. Plaintiff does not describe what a "significant event" is nor

20   provide any date. *See Ashcroft v. Iqbal*, 556 U.S. at 663 (The complaint must contain "sufficient

21   factual matter, accepted as true, to state a claim to relief that is plausible on its face. ... A claim

22   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

23   reasonable inference that the defendant is liable for the misconduct alleged." *See also Twombly*,

24   550 U.S. at 555, 570.

25         Plaintiff has also alleged that "every day since at least May 2, 2023, Defendants have

26

27   whether a manmade plugged drainage ditch holding the access road non-industrial stormwater
     onsite is a "Water of the State," said water to be pumped back to the infiltrators to be infiltrated
28   back into the soil. The blocked culvert is depicted on RJN A, Appendix A, North Yard Site Map.
     *See* Decl. Of Jackson, ¶¶8-10.

discharged polluted storm water from the facility." FAC ¶133. There is a complete failure to provide factual information as to what dates and how this could occur even when it was *not* raining. There is nothing else alleged factually to support the threadbare conclusory allegations. The FAC does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face nor factual content that allows this Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

        4.      Plaintiff Has Pled No Facts at All of Locations Other than the Sealed-Off Upper Yard for Alleged Discharges.

Plaintiff  fails to provide sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face nor factual content that allows this Court to draw the reasonable inference that the defendant has discharged storm water at "other locations" violating the CWA. FAC ¶ 104. The complaint is bereft of any facts in support of ¶104. This fails to meet federal pleading standards. *See e.g., Myvett v. Litton Loan Servicing*, LP, 2010 U.S. Dist. LEXIS 18753, *4 (N.D.Cal. Mar. 3, 2010); *Ashcroft v. Iqbal*, 556 U.S. at 663.

  Defendant has asked this Court to take judicial notice the 2022 SWPPP and Annual Reports. The 2022 SWPPP called out by Plaintiff to support its claims directly contradicts the conclusory statement that the 2022 SWPPP identifies active discharge locations in the Upper Yard. The document states that prior to 2022 there were discharge locations that are now sealed and are no longer used. RJN, Exh. A at 6-7. The Annual Reports which are Water Board Official Records subject to judicial notice, clearly state that the sealed discharge locations are checked at rain events and have remained sealed with no discharges from the facility at all, confirming the no discharge status. RJN, Exh. B-D.

Other than one paragraph based on information and belief (FAC ¶104), there is nothing else pled, neither plausible nor sufficient, as a factual basis for ¶104. *See Ashcroft v. Iqbal*, 556 U.S. at 663; *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). The claim in ¶104 that there are other discharge locations somewhere on site is factually deficient, and the Court should *not* accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences

This court must dismiss the First Claim for Relief, and force Plaintiff to plead facts in support of the conclusory fact-bare assertions that Defendants are discharging directly into "Waters of the United States." The Court must require that Plaintiff plead the dates of the alleged discharges and the precise locations from which the discharges have occurred.

5.   Plaintiff Has Pled No Facts as to Noisy Creek Being a Navigable
     Water Covered by the Clean Water Act.

There are no facts pled in support of the conclusory statement in the FAC at ¶110 that Noisy Creek is a "Water of the United States." Noisy Creek is an ephemeral creek which dries up most of the year. Recently, the United States Supreme Court has clarified what Waters of the United States are, and the U.S. Army Corps of Engineers ("Corps") and U.S. Environmental Protection Agency ("EPA") on Aug. 29, 2023, issued a final rulemaking revising the definition of Waters of the United States ("WOTUS") consistent with that decision. Plaintiff now must plead facts that Noisy Creek is a Jurisdictional Tributary/permanent WOTUS.

In *Sackett v. EPA*, 598 U.S. 651 (2023), the Court concluded the term "Waters of the United States" encompasses only relatively permanent waters, and not waters that are dry or seasonal (i.e., ephemeral waters). The issue in *Sackett* was whether wetlands on their property were jurisdictional waters under the CWA because they were near a ditch that fed into a creek, which fed into a navigable, intrastate lake. The Court concluded that wetlands are considered WOTUS only when they have a continuous surface connection to other WOTUS, so there is no clear demarcation between waters and wetlands. The ditch in that case was not a WOTUS. *Sackett*, 598 U.S. at 678-679.

After *Sackett*, on Aug. 29, 2023 the Corps and EPA, issued a final rule revising the definition of "Waters of the United States" within Corps1 and EPA2 regulations, pursuant to the CWA, 33 U.S.C. § 1251, *et seq*. ("WOTUS Rule"). The WOTUS Rule was issued in order to conform the definition of "WOTUS" to the May 25, 2023, opinion of the U.S. Supreme Court in *Sackett v. EPA*, 598 U.S. 651 (2023). 88 Fed. Reg. 3004-3144 (Jan. 18, 2023); 88 Fed. Reg. 61964-61969 (Sept. 8, 2023); *see also* 33 C.F.R. § 328.3; 40 C.F.R. § 120.2.

The new WOTUS Rule significantly narrows the reach of the CWA, excluding for

example, intermittent and ephemeral streams. Intermittent ephemeral streams are not be considered jurisdictional given that they are not "relatively permanent, standing or continuously flowing bodies of water." The WOTUS Rule now defines "Waters of the United States" to include: relatively permanent, standing or continuously flowing Jurisdictional Tributary, or Jurisdictional Wetland.

Noisy Creek is a seasonal, rain-fed creek. It is neither permanent nor continuously flowing, and it runs dry most of the years since its source is rainfall. Not only are there no facts to support the assertion that there have been any discharges from the facility, Plaintiff has not pled *facts* as to how this Court could find that there was sufficient factual matter, accepted as true, to state a claim that the ephemeral creek is WOTUS nor factual content to allow this Court to draw the reasonable inference that this seasonal, ephemeral, intermittent Noisy Creek falls under the CWA as a Jurisdictional Tributary. Plaintiff must be forced to plead facts that it is permanent.

B.     Second Claim for Relief  – SWPPP.

FAC ¶63 states:

The SWPPP must include, among other elements: (1) the facility name and contact information; (2) a site map; (3) a list of industrial materials; (4) a description of potential pollution sources; (5) an assessment of potential pollutant sources; (6) minimum BMPs; (7) advanced BMPs, if applicable; (8) a monitoring implementation plan; (9) an annual comprehensive facility compliance evaluation; and (10) the date that the SWPPP was initially prepared and the date of each SWPPP amendment, if applicable.

FAC ¶64 states: Dischargers must revise their SWPPP *whenever necessary* and certify and submit via the Regional Board's Storm Water Multiple Application and Report Tracking System ... their SWPPP within 30 days whenever the SWPPP contains significant revisions(s).... FAC ¶95 states: The Regional Board's Notice of Violation alleges that Kernen Construction violated Section X.B of the General Permit by failing to revise the SWPPP and site map since 2022 to reflect current conditions at the site. FAC ¶116 states: The Facility's SWPPP has not been revised since February 2022 to reflect current conditions at the Facility. FAC ¶117 states: The Facility's SWPPP fails to accurately identify each discharge point at the Facility. FAC ¶119 states: Defendants' SWPPP does not include a compliant site map, adequate pollutant source descriptions or assessments, adequate BMPs or descriptions of BMPs. FAC ¶138 states:

Defendants have failed to develop and implement an adequate SWPPP for its Facility, in violation of General Permit Section X.

Defendants have requested this Court to take Judicial Notice of the General Permit for the Court to review General Permit Section X. RJN, Exh. E.

Plaintiff has cited no sufficient facts or factual content that allows this Court to draw the reasonable inference that the defendant is liable for the misconduct alleged that a revision of Defendants' timely filed 2022 SWPPP "was necessary" after it was filed in 2022. *See* FAC ¶¶ 64, 116 and 138. Plaintiff must be forced to plead facts as to why it "was necessary" to revise the 2022 SWPPP, especially when the Annual Reports document no discharges from the facility, and Plaintiff cannot plead the facts necessary to support the claim of any discharge (see above).

Plaintiff has not pled that the 2022 SWPPP did not include, among other elements: (1) the facility name and contact information; or (2) a site map; or (3) a list of industrial materials; or (4) a description of potential pollution sources; (5) or an assessment of potential pollutant sources; (6) or minimum BMPs; (7) or advanced BMPs, if applicable; (8) or a monitoring implementation plan; (9) or an annual comprehensive facility compliance evaluation; and (10) or the date that the SWPPP was initially prepared and the date of each SWPPP amendment, if applicable. These elements are what is required under General Permit Section X, and the 2022 SWPPP contains those elements.

Plaintiff has cited no factual content that allows this Court to draw the reasonable inference that the Defendants have failed to identify each discharge point on the 2022 SWPPP (FAC ¶117.)  As set forth above, *Plaintiff* has not been able to even identify any actual discharge from any specific location. The 2022 SWPPP states and shows by maps that there are no discharge points at the facility - only observation locations. Plaintiff has not pled facts/factual content of where there are active discharge points not been identified in the 2022 SWPPP. Plaintiff only asserts FAC ¶101 identifying discharge points (FAC ¶101: "SWPPP states that if the storm water collection system were to reach capacity, the Upper Yard would discharge storm water from several points along the southern boundary of the Upper Yard"). *See* RJN, Exh. A, section 2.1.4 at 6-7 and appendix A at 38-42: Section 2.4.1 states only that there is a possibility

that in an historical rain year, the sediment traps could be overwhelmed resulting in a discharge. The 2022 SWPPP does not identify any current or active discharge locations at all; all previous locations were sealed/plugged; and the official records of the Annual Reports (RJN, Exh. B-D) confirm this. Plaintiff is trying to allege that there are active discharge points not identified in the SWPPP, so it must amend and say where they are located in either the Upper or Lower Yards. Since the SWPPP includes all of the required elements of a SWPPP under the language of Section X, Plaintiff cannot allege factual content that it does not have the required elements.

FAC ¶138 asserts without supporting facts/factual content that Defendants have failed to develop and implement an *adequate* SWPPP for its Facility, but the FAC is bereft of facts in support of the allegation of "inadequacy". The 2022 SWPPP has all of the required elements of Section X.

There is a site map as required included and described in the 2022 SWPPP as required under General Permit Section X. The SWPPP (RJN, Exh. A) referred to in the FACstates in section 2.5 on page 11 the required site map information in table 2.3; it includes Appendix A which contains the site maps. There are no other facts and support of this conclusory assertion that it is *non-compliant* since it does have a site map which is what is required. These assertions in ¶117 are  contradicted by the very document Plaintiff cites to. There are no other facts, sufficient or plausible, to support ¶117. Plaintiff must be forced to plead sufficient factual content that allows this Court to draw the reasonable inference that the defendant is liable for the misconduct alleged in this claim for relief.

FAC ¶119: Defendants' SWPPP does not include a compliant site map, adequate pollutant source descriptions or assessments, adequate BMPs or descriptions of BMPs. However, the FAC is bereft of facts in support of each allegation in ¶119. Plaintiff makes the conclusory statement that there are no adequate pollution source descriptions. The 2022 SWPPP which has been repeatedly referred to as the source document by Plaintiff, describes in (RJN, Exh. A) section 2.3.1 at page 8, a description of potential pollutant sources, and the description of the sources is set forth in table 2.1 at page 9, which are the required elements of a SWPPP per Section X. Plaintiff asserted no facts/factual content, much less plausible or sufficient, regarding

the alleged inadequacy of the SWPPP since the very document they refer to does in fact include the description as required by the General Permit X. Plaintiff  must allege sufficient and plausible facts for this Court to find factual content in support of why or how these descriptions are inadequate along with how what was filed was not compliant with General Permit X since the 2022 SWPPP does include: X(4) a description of potential pollution sources; and X(5) an assessment of potential pollutant sources.

Plaintiff makes the conclusory statement in ¶117 that there are no adequate BMPs or descriptions of BMPs in the 2022 SWPPP. General Permit Section X(6) requires "minimum BMPs. The source document referred to from 2022 clearly states the description of the BMPs for the facility *as required by General Permit X.*. As discussed below, BMPs are to *reduce or eliminate* discharge. Plaintiffs have failed to plead facts for the Court to ascertain there is any content to this claim in  117 that the current BMPs are inadequate because they are not at least "minimum BMPs." RJN, Exh. A, sets forth the BMPs in place to reduce or eliminate discharge from the facility: Section 1.1 on page 1; section 1.7 on page 3; annual evaluations of BMPs page 4; section 1.10, comprehensive facility compliance evaluation at 4-5; section 2.1.5 and table 2.1 assessment of pollution sources and corresponding BMPs at 7-9; 2.4 identification of non-storm water discharges at 10 -11; section 3.1 minimum BMPs at 13-14, table 3.1 minimum BMPs at 14, Appendix F at 54, and the descriptions of BMPs in sections 3.1.1-3.1.7 and section 3.2 at 19-20 with tables 3.3 and 3.4 at 20-21. Plaintiff must plead sufficient and plausible facts in support of this claim for relief and  117 that Defendants SWPPP does not include "minimum BMPs. Plaintiff has not. Plaintiff has simply made this conclusory statement of "inadequacy" with no factual content instead of facts that the 2022 SWPPP does not include "minimum BMPs." Plaintiff must plead sufficient facts as to failing to include minimum BMPs which are required by Section X.

This court must dismiss the Second Claim for Relief and force Plaintiff to plead facts in support of the conclusory fact-bare assertions that Defendants are in violation for failure to revise their SWPPP and/or that the SWPPP does not have the required or adequate information and/or why it was  necessary to revise the SWPPP, especially since the BMPs have eliminated all

discharge. Nor is there anything as to why the identification of pollution sources in the current SWPPP is inadequate. Nor the site map inadequate. Nor are there any facts at all as to why the current description of minimum BMPs is inadequate.

C.    Third Claim for Relief – BAT/BCT/BMP.

FAC allegations in this claim are ¶147: Defendants have failed, and continue to fail, to reduce or prevent pollutants associated with its industrial activities from being discharged to waters of the United States. ¶148: Defendants discharge storm water ... during every significant rain event. 149: Defendants' failure to develop and/or implement BMPs that achieve the pollutant discharge reductions ... is a violation of the General Permit's Effluent Limitations and the Act.

General Permit Requirements: Under the terms of the General Permit issued by the California State Water Resources Control Board, Section I Findings and referred to in the FAC ¶ 149 states that: "1.The Federal Clean Water Act (Clean Water Act) ***prohibits certain discharges of storm water containing pollutants except in compliance with a National Pollutant Discharge Elimination System (NPDES) permit***" and that ***"[t]he NPDES permit must require implementation of Best Available Technology Economically Achievable (BAT) and Best Conventional Pollutant Control Technology (BCT) to reduce or prevent pollutants in storm water discharges and authorized nonstorm water discharges (NSWDs)***. "This General Permit requires control of pollutant discharges using BAT and BCT to reduce and prevent discharges of pollutants...."RJN, Exh. E, General Permit, §§ I.A.1; I.D.31and 32 at 1,5 [Emphasis added.].

Defendants' 2022 SWPPP and associated appendix maps state unequivocally that there are no discharge locations at the facility and that all prior discharge locations have been sealed. The Annual Reports document no discharges from 2021 to present. Plaintiff has not pled facts/factual content there was any discharge whatsoever during the operable time in their FAC so there are insufficient factual content to allows this Court to draw the reasonable inference that the defendant is liable for the misconduct alleged in the Third Claim for Relief (failing to "reduce or eliminate" discharges by insufficient BAT/BCT.) The official records state there are no active discharge locations, and that there have not been any discharges from the facility during the

2022-2023 rainy season (under injunction), and the 2023-2024 rainy season. Plaintiff has not pled any factual content for this Court to draw the reasonable inference that there are discharges from May 2, 2024 through the date of filing the FAC. Since Plaintiff has failed to plead facts/factual content for the Third Claim for Relief (*see above*, First Claim for Relief, V.A.1-5) the Court must grant the motion under Rule 12(b)(6). Plaintiff must be forced to amend and plead facts sufficient to make a plausible claim for the Third Claim for Relief that Defendants have failed to reduce or eliminate discharge by way of their current BAT/BCT/BMP. Plaintiff must set forth factual content for this Court to draw the reasonable inference that the defendant is liable for the misconduct alleged in the First Claim that there were discharges; and for which dates - either daily or significant rain events when the system was overwhelmed; and then Plaintiff must then be forced to plead facts to support this claim for relief that the current BMPs have not reduced or eliminated discharge since the BMPs went into place in 2022.

D.       Fourth Claim for Relief – Monitoring/Sampling.

General Permit Sections XI provides for monitoring, Visual Observations and Sampling. Pursuant to section XI, (General Permit) sampling must take place *at a discharge event*, Plaintiff has not pled sufficient facts for the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged in the First Claim to establish any discharge event anywhere in the Upper or the Lower yard. The court must grant the Motion under Rule 12(b)(6) and force Plaintiff to plead facts in support of an event for Defendants to sample.

E.       Fifth Claim for Relief – Failure to Submit a Certified Annual Report.

FAC ¶¶163 through 171 alleges that the General Permit requires dischargers to submit Annual report. The Annual Reports have been filed and have been certified. They confirm the elimination of discharge since 2021. The SWPPP 2.1.4 and Appendix A maps show no discharge points at the facility, just observation locations as discussed above. ¶168 and 169 correctly states Defendants' Annual Reports state that they certified no discharge from the facility. ¶171 states that the SWPPP has at least 3 discharge locations even though a review of the document negates this. ¶171 then states there are "several more not identified within the 2022 SWPPP, including

several located in the Lower Yard," however there are no facts alleged in the FAC to support this conclusory statement (see above, First - Fourth Claims). While ¶106 alleges that some unnamed neighbor has witnessed discharge from the Lower Yard, there are no facts alleged as to who this is, what date this occurred, how it could be determined that what the unnamed person allegedly saw could be storm water discharge nor where allegedly occurred in the Lower Yard to give any factual content to the Fifth Claim for Relief. The Court should grant the Motion and require Plaintiff to state the factual content for the conclusory statements in the Fifth Claim for Relief.

## V.    CONCLUSION.

Defendants take seriously their obligations under the CWA. The put in place BMPs that not only reduced their stormwater discharge into WOTUS, but eliminated it. Plaintiff has not pled any sufficient facts to provide factual content to support the First Claim for unlawful discharge. Plaintiff has only alleged threadbare, conclusory statements which are directly contradicted by the documentary evidence cited to in the FAC. This Court must dismiss the First Claim for Relief, and force Plaintiff to plead it with sufficient facts to provide sufficient factual content as to daily discharges on a daily basis from May 2, 2023, or on the alternate basis that there were actual discharges during undefined and undated significant rain events. The Second through Fifth Claims for Relief must be dismissed for failure to state a claim for relief unless Plaintiff can sufficiently plead that there were any actual discharges from the facility, and force Plaintiff to plead as to how and why these claims for relief apply to a facility that has effectively precluded all stormwater discharge from 2021 to present.

DATED: October 2, 2024                   Respectfully submitted,

                                        HARLAND LAW FIRM LLP


                                        ___/s/ Allison G. Jackson_____
                                        Allison G. Jackson

                                        Attorneys for Defendants
                                        KERNAN CONSTRUCTION CO. et al.