WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
P.O. Box 1128
Arcata, CA 95518
(707) 630-5061
wverick@igc.org

DAVID WILLIAMS (State Bar No. 144479)
Law Offices of David Williams
1839 Ygnacio Valley Road, Suite 351
Walnut Creek, CA 94598
(510) 847-2356
dhwill7@gmail.com

BRIAN ACREE (State Bar No. 202505)
Law Office of Brian Acree
95 3rd Street, Second Floor
San Francisco, CA 94103-3103
(510) 517-5196
brian@brianacree.com

WILLIAM N. CARLON (State Bar No. 305739)
Law Office of William Carlon
437 Post Street
Napa, CA 94559
(530) 514-4115
william@carlonlaw.com

Attorneys for Plaintiff
CALIFORNIANS FOR ALTERNATIVES TO TOXICS

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS,<br><br>        Plaintiff,<br><br>    vs.<br><br>KERNEN CONSTRUCTION CO., BEDROCK INVESTMENTS LLC, SCOTT FARLEY, AND KURT KERNEN,<br><br>        Defendants. | Case No. 4:24-cv-04067<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date: November 13, 2024<br>Time: 2:00 p.m. |

## TABLE OF CONTENTS

I.    INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED ............................ 5

II.   LEGAL BACKGROUND ................................................................................................ 5

    *a.    The Clean Water Act* ................................................................................................ 5

    *b.    Storm Water Associated with Industrial Activity* ................................................... 6

    *c.    The General Permit* ................................................................................................. 7

III.  FACTUAL AND PROCEDURAL BACKGROUND .......................................................... 7

    *a.    Defendants' History of Violations of the Clean Water Act and the General Permit* ............... 7

    *b.    The Regional Board's Notice of Violation* ............................................................. 8

IV.   STANDARD OF REVIEW ............................................................................................ 9

    *a.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)* ............................ 9

V.    ARGUMENT ................................................................................................................. 10

    *a.    Plaintiff Adequately Alleged Facts Sufficient to Sustain a Claim that Defendants Are Discharging Contaminated Storm Water from the Facility in Violation of the Clean Water Act* .. 10

        **i.    Plaintiff Adequately Stated Claims that Defendants Have Unlawfully Discharged Polluted Storm Water from Its Facility and Provided the Dates of Those Discharges** ...... 10

        **ii.    Plaintiff Adequately Alleged that Defendants Discharge Storm Water to Navigable Waters** ................................................................................................................. 12

    *b.    Plaintiff's Amended Complaint Adequately Alleges the Numerous Ways in Which Defendants Violate the Conditions of the General Permit* ............................................................. 13

VI.   CONCLUSION .............................................................................................................. 15

1

2

## TABLE OF AUTHORITIES

3

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................................. 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................... 10, 14

*Coastal Env't Rts. Found. v. Am. Recycling Int'l, Inc.*, 2017 U.S. Dist. LEXIS 202649, 2017 WL
6270395 (S.D. Cal. Dec. 8, 2017) ................................................................................. 14

*Comm. To Save Mokelumne River v. East Bay Mun. Util. Dist.*, 13 F.3d 305 (9th Cir. 1993) .......... 10

*Ctr. for Cmty. Action & Env't Justice v. Friends of Riverside Airport*, 2017 U.S. Dist. LEXIS
232218 (C.D. Cal. Sept. 28, 2017) ................................................................................ 14

*Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141 (9th Cir. 2000) ............................ 6

*EPA v. Cal. ex rel. State Water Res. Control Bd.*, 426 U.S. 200 (1976) ............................................ 6

*Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 826 (9th Cir. 2021) ............................... 13

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) ........................................................................ 11

*Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580 (9th Cir. 2008) .................................................. 9, 10

*NRDC v. Cnty. of L.A.*, 725 F.3d 1194 (9th Cir. 2013) .............................................................. 6

*NRDC v. EPA*, 966 F.2d 1292 (9th Cir. 1992) .......................................................................... 6

*NW Env't Advocs. v. City of Portland*, 56 F.3d 979 (9th Cir. 1995) ......................................... 13

*Rapanos v. U.S.*, 547 U.S. 715 (2006) ...................................................................................... 12

*Sackett v. EPA*, 598 U.S. 651 (2023) ....................................................................................... 12

*San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719 (N.D. Cal. 2011) ............ 10

*Waterkeeper v. SSA Terminals*, 702 F. Supp. 3d 903 (C.D. Cal. 2023) ..................................... 14

*WaterKeepers N. Cal. v. AG Indus. Mfg.*, 375 F.3d 913 (9th Cir. 2004) ...................................... 6

*Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold and Easement in the
Cloverly Subterranean Geological Formation*, 524 F.3d 1090 (9th Cir. 2008) ........................... 10

**Statutes**

33 U.S.C. § 1251(a) ................................................................................................................. 5

33 U.S.C. § 1311(a) ................................................................................................................. 5

33 U.S.C. § 1342 ..................................................................................................................... 6

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

33 U.S.C. § 1362(12) ........................................................................................................ 6, 10

33 U.S.C. § 1362(6) .............................................................................................................. 6

33 U.S.C. § 1362(7) ............................................................................................................ 12

**Rules**

Fed. R. Civ. P. 8(a)(2) ........................................................................................................ 9

**Regulations**

40 C.F.R. § 122.26(b)(14) ................................................................................................ 6, 7

## I.    INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

Defendants' Motion to Dismiss fails because, among other things, it relies on this Court taking judicial notice of the *truth* of statements made in the Storm Water Pollution Prevention Plan and Annual Reports prepared by Defendants. While the existence of these documents may be judicially noticed, the truth of the statements made by Defendants within the documents are not judicially noticeable, as set forth in Plaintiff's Objections to the Request for Judicial Notice, filed concurrently. Further, what Defendants raise is a factual dispute – whether or not the Facility discharges storm water associated with industrial activities. In its September 20, 2021 Order issuing a permanent injunction against Defendants, the Court observed that BMPs installed by Defendants did "not appear sufficient, on their own, to ensure that the admitted ongoing violations of the General Permit and CWA will cease and will not be likely to repeat." (4:20-cv-01348-YGR, Docket No. 60 at 8:5-7.) The Court ordered Kernen to implement "all measures necessary to operate the Facility in full compliance with the requirements of the CWA and General Permit" including, among other things, "to prevent future discharges in violation of the CWA and General Permit." (*Id.* at 8:20-24.) In response to this injunction, Defendants submitted a "Compliance Plan" that stated that Defendants had achieved a "'de facto' no discharge status" – a made-up term that has no meaning in the CWA or General Permit – by relying on the very same BMPs that this Court had observed were not sufficient. (4:20-cv-01348-YGR, Docket No. 66.) It should not be a surprise, then, to discover that these BMPs were in fact not sufficient, and that Defendants continue to discharge in violation of the CWA and General Permit.

Plaintiff's Amended Complaint adequately states facts that support its claims that Defendants do, in fact, continue to discharge storm water associated with industrial activities from the Facility.

## II.    LEGAL BACKGROUND

### a.    The Clean Water Act

Congress enacted the Clean Water Act in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To that end, section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from a point source into waters of the United States, unless such discharge is in compliance with the terms of a NPDES

1   permit issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342. The term

2   "discharge of pollutants" means "any addition of any pollutant to navigable waters from any point

3   source." 33 U.S.C. § 1362(12). Pollutants include but are not limited to industrial waste, chemical

4   waste, biological materials, heat, rock, and sand discharged into water. 33 U.S.C. § 1362(6). A "point

5   source" is "any discernible, confined and discrete conveyance, including but not limited to any pipe,

6   ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal

7   feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."

8   33 U.S.C. § 1362(14). Thus, "[u]nder the NPDES, it is unlawful for any person to discharge a

9   pollutant without obtaining a permit and complying with its terms." *EPA v. Cal. ex rel. State Water

10  Res. Control Bd.*, 426 U.S. 200, 205 (1976). "The discharge of pollutants without an NPDES permit,

11  or in violation of a permit, is illegal." *WaterKeepers N. Cal. v. AG Indus. Mfg.*, 375 F.3d 913, 916

12  (9th Cir. 2004) (citing *Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1145 (9th

13  Cir. 2000)); *see also NRDC v. Cnty. of L.A.*, 725 F.3d 1194, 1198 (9th Cir. 2013) ("In nearly all

14  cases, an NPDES permit is required before anyone may lawfully discharge a pollutant from a point

15  source into the navigable waters of the United States.").

16         *b.   Storm Water Associated with Industrial Activity*

17         In 1987, the Act was amended to establish a framework for regulating storm water discharges

18  through the NPDES program. *WaterKeepers N. Cal v. AG Indus. Mfg.*, 375 F.3d at 916. An NPDES

19  permit is required for any storm water "discharge associated with industrial activity." 40 C.F.R. §

20  122.26(a)(ii). "Storm water discharge associated with industrial activity" is defined by regulation as

21  "[t]he discharge from any conveyance that is used for collecting and conveying storm water and that

22  is directly related to manufacturing, processing, or raw materials storage areas at an industrial plant."

23  40 C.F.R. § 122.26(b)(14). This definition is "very broad" with the "operative word" being

24  "*associated*." *NRDC v. EPA*, 966 F.2d 1292, 1304 (9th Cir. 1992). For a permit to be required, "[i]t is

25  not necessary that storm water be contaminated or come into direct contact with pollutants; only

26  association with any type of industrial activity is necessary." *Id.* Storm water is associated with

27  industrial activity if it is associated with an activity classified within any one of a number of

28  specified Standard Industrial Classification code categories, or if it is associated with a facility

subject to storm water effluent limitations guidelines, new source performance standards, or toxic pollutant effluent standards found in 40 Code of Federal Regulations, Chapter I, Subchapter N. 40 C.F.R. § 122.26(b)(14). Facilities such as Defendants' that are designated as Standard Industrial Classification Code 1429 – crushed and broken stone (not elsewhere classified), generate storm water associated with industrial activity and are required to be covered under the General Permit. General Permit, Attachment A.

>    *c.  The General Permit*

In California, the United States Environmental Protection Agency ("EPA") has delegated its authority to issue NPDES permits to the California State Water Resources Control Board ("SWRCB"), and the SWRCB has issued a statewide NPDES "General Permit for Storm Water Discharges Associated with Industrial Activity." NPDES General Permit No. CAS000001, SWRCB Water Quality Order No. 2014-0057-DWQ as amended by Order 2015-0122-DWQ and Order No. 2018-0028-DWQ ("General Permit"). Dischargers subject to the General Permit enroll in either Notice of Intent ("NOI") coverage or No Exposure Certification ("NEC") coverage. General Permit, Section II.B. Dischargers that discharge storm water associated with industrial activity to waters of the United States are required to enroll in NOI coverage. Id. at Section II.B.1.

The General Permit contains three primary and interrelated categories of requirements: (1) discharge prohibitions, receiving water limitations and effluent limitations; (2) Storm Water Pollution Prevention Plan ("SWPPP") requirements; and (3) self-monitoring and reporting requirements.1 *See* General Permit, Sections X-XII.

## III.    FACTUAL AND PROCEDURAL BACKGROUND

>    *a.  Defendants' History of Violations of the Clean Water Act and the General Permit*

Defendants own and operate an approximately 37-acre industrial facility located at 2350 Glendale Drive near McKinleyville, California. The facility is used to manufacture and store rock aggregate products. The Facility is also used, and has been used in the past, for storing scrap roofing shingles, scrap metal, soil, and organic debris. Most of these activities occur outside in areas that are exposed to storm water and storm flows due to the lack of overhead coverage, functional berms, and other storm water controls. During every rain event, polluted storm water is generated at the Facility

when it comes into contact with these industrial materials and activities. In 2016, Plaintiff brought a citizen suit to enforce the Clean Water Act and General Permit against Defendants, and in 2017 the parties resolved the litigation by settlement. Defendants failed to comply with the terms of that agreement, and on February 21, 2020, Plaintiff filed its second lawsuit in an attempt to get Defendants to comply with the Clean Water Act and General Permit.

In that action, Defendants were found liable for a total of 9,461 violations of the Clean Water Act occurring between November 14, 2017 and December 3, 2020. (4:20-cv-01348-YGR, Docket No. 58 at 9.) Rather than address the sources of the pollution, or install management practices that would reduce the pollution discharged, Defendants put all their resources into containing the storm water, and gambled that their facility would never discharge again. They now claim that they contain all of the polluted storm water generated on site, and have gone to a "no-discharge status." (Docket No. 21 at 8:4.) However, in another filing in the prior action, Defendants conceded that it would be impossible for them to claim "no-discharge" through the General Permit's Notice of Non-Applicability ("NONA") provisions. (4:20-cv-01348-YGR, Docket No. 60 at 6:28-7:2.) Instead, Defendants invented their own "no discharge" standard, one untethered to the NONA provisions and the General Permit, but have failed to "explain what that means or how it relates to the requirements of the CWA and General Permit." (*Id.* at 7:26-27.)

The reality is that the Facility *does* discharge. Plaintiff now brings this third action because neighbors of the Facility have documented, repeatedly, discharges of polluted storm water from Defendants' Facility into Noisy Creek. Plaintiff's representatives have collected samples of these discharges, and have found more of the same with respect to the levels of pollutants that were detected in Defendants' historic storm water sampling – exceedingly high sediment, aluminum, iron, and other pollutants.

### b. The Regional Board's Notice of Violation

Plaintiff is not alone in its concern about the environmental impacts of Defendants' continued pollution discharges to Noisy Creek and Hall Creek, critical habitat of endangered coho salmon. The Regional Water Quality Control Board ("Regional Board"), on May 21, 2024, issued Defendants a Notice of Violation of Water Code Section 13267 Investigative Order R1-2022-0025. (Docket No.

20 at 15:3-6.) The Regional Board's Notice of Violation alleges that Defendants violated Section III of the General Permit for discharging industrial storm water and authorized non-storm water containing pollutants that cause or threaten to cause pollution, contamination, or nuisance, (*id.* at 15:7-10); Section V of the General Permit by failing to implement required minimum BMPs at the Facility, including BMPs to minimize or reduce the discharge of sediment and other pollutants in the Facility's storm water discharges, (*id.* at 15:11-14); Section X.B of the General Permit for failing to revise the SWPPP and site map since 2022 to reflect current conditions at the site, (*id.* at 15:15-17); Section X.H.1 of the General Permit for failing to implement minimum BMPs such as good housekeeping, preventative maintenance, spill and leak prevention and response, material handling and waste management, and erosion and sediment control, (*id.* at 15:18-21); and Section XI.B of the General Permit for failing to collect any samples of storm water discharges from the Facility since 2020 (*id.* at 15:22-24).

Defendants falsely state that the Regional Board's Notice of Violation "dealt only with a Notice of Violation of Water Code Section 13267 (NOV) dated May 21, 2024, and was limited to potential Waters of the State, to wit, the Porter-Cologne Water Act and State Water Code 13267 and whether a manmade plugged drainage ditch holding the access road non-industrial stormwater onsite is a "Water of the State…." (Docket No. 21 at 15:25, fn. 1.) In reality, as described above, the Regional Board's Notice of Violations alleges similar claims of violations of the General Permit, and thus the Clean Water Act, as Plaintiff, including that Defendants have unlawfully discharged industrial storm water from their Facility. (Docket No. 20 at 15:3-24.)

## IV.     STANDARD OF REVIEW

### a.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

In ruling on a motion to dismiss for a failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). To defeat a 12(b)(6) motion, Plaintiff's complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint is sufficient if it "contain[s] sufficient factual matter . . .

to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making its determination, the Court

"may generally consider only allegations contained in the pleadings, exhibits attached to the

complaint, and matters properly subject to judicial notice." *Williston Basin Interstate Pipeline Co. v.

An Exclusive Gas Storage Leasehold and Easement in the Cloverly Subterranean Geological

Formation*, 524 F.3d 1090, 1096 (9th Cir. 2008) (internal citation omitted).

**V.    ARGUMENT**

>   *a.   Plaintiff Adequately Alleged Facts Sufficient to Sustain a Claim that Defendants
>         Are Discharging Contaminated Storm Water from the Facility in Violation of the
>         Clean Water Act*

The Amended Complaint contains extensive factual allegations supporting its claims for

relief. Taken as true, and construed in the light most favorable to Plaintiff, these allegations are

adequate to state a claim for relief that is plausible on its face. *Lazy Y Ranch LTD v. Behrens*, 546

F.3d 580, 588 (9th Cir. 2008); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In order to adequately state a claim that a discharge of storm water violates the Clean Water

Act, Plaintiff must allege six elements: that (1) a person (2) discharged (3) a pollutant (4) to

navigable waters of the United States (5) from a point source (6) without a permit. *San Francisco

Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 754 (N.D. Cal. 2011) citing *Comm. To

Save Mokelumne River v. East Bay Mun. Util. Dist.*, 13 F.3d 305, 308 (9th Cir. 1993). Plaintiff has

alleged all six of these elements in its Amended Complaint. In their Motion to Dismiss, Defendants

focus only on whether Plaintiff alleged adequate facts to support the second and fourth elements

stated above.

>   **i.   Plaintiff Adequately Stated Claims that Defendants Have Unlawfully
>         Discharged Polluted Storm Water from Its Facility and Provided the
>         Dates of Those Discharges**

Under the Act, "[t]he term 'discharge of a pollutant' and the term 'discharge of pollutants'

each means (A) any addition of any pollutant to navigable waters from any point source, (B) any

addition of any pollutant to the waters of the contiguous zone or the ocean from any point source

other than a vessel or other floating craft." 33 U.S.C. § 1362(12). *S.F. Baykeeper*, 791 F. Supp. 2d at

754. The Amended Complaint alleges that Defendants discharge pollutants to navigable waters from

point sources in a number of places. (Docket No. 20 at 3:6-10, 13-18; 4:12-14; 5:4-6, 8, 12-14, 16-17; 14:22-15:2; 16:5-24; 17:1-4; Docket No. 20-1 at 4.) Defendants argue that Plaintiff's allegations of unlawful discharges are not adequate to state a claim for relief because they contradict statements made by Defendants in their 2022 Storm Water Pollution Prevention Plan ("2022 SWPPP"). (Docket No. 21 at 13:8-15:2.) As an initial matter, Plaintiff has objected to Defendants' Request for Judicial Notice on the grounds that the truth of the statements made in the 2022 SWPPP are not properly subject to judicial notice because they are subject to dispute, and in fact, are the subject of this litigation. In its Amended Complaint, Plaintiff alleges that the 2022 SWPPP is inadequate and legally deficient. (Docket No. 20 at 19:17-20:15.) Similarly, the annual reports prepared by Defendants are also subject to dispute because the reports suffer similar defects as does the 2022 SWPPP, namely, the annual reports fail to identify all locations at the Facility from which Defendants discharge storm water associated with industrial activities. (*Id.* at 22:16-23:9.) Defendants misleadingly label their documents as "official public records" or "official records" approximately a dozen times in their Motion, as if to imbue their own statements with the imprimatur of a government agency, but no special consideration should be given to these documents or the representations made within them.

Paragraphs 15 and 16 of the Amended Complaint identify discharges from Defendants' Lower Yard and allege that analysis of samples taken of the discharges reported extremely high levels of aluminum and high levels of suspended sediment. (Docket No. 20 at 4:12-18.) Plaintiff's Notice Letter addresses these alleged discharges, providing even more specific information that the Lower Yard "discharges industrial storm water whenever it rains more than 0.25 inches in a 24-hour period." (Docket No. 20-1 at 9.)  The Notice Letter goes on to say that the "industrial storm water is discharged from Kernen's Lower Yard directly into Noisy Creek at multiple locations." (*Id.*) These allegations must be taken as true for the purposes of this motion. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Defendants are apparently confused by Plaintiff's allegations regarding the dates of discharge. The Amended Complaint does not allege that Defendants discharge every single day, as Defendants would have this Court believe, (*see* Docket No. 21 at 11:16-19), but instead that "[s]ince

1   at least May 2, 2023, Defendants have discharged [polluted storm water]" (Docket No. 20 at 17:27-

2   18:2). Plaintiff alleges that these discharges occur during "every significant rain event." (*Id.* at 18:3-

3   7.) Defendants complain that "Plaintiff does not describe what a 'significant event' [sic] is nor

4   provide any date to provide notice to Defendants", (Docket No. 21 at 16:19-20), but Plaintiff's

5   notice letter, attached as an exhibit to the Amended Complaint and incorporated therein by

6   reference, does in fact provide the specific dates on which Plaintiff alleges significant rain events

7   occurred. (Docket No. 20-1 at 13.)

8   
**ii.   Plaintiff Adequately Alleged that Defendants Discharge Storm Water to Navigable Waters**

9       "Navigable waters" means "the waters of the United States." 33 U.S.C. § 1362(7). Waters

10   of the United States is defined at 40 C.F.R. § 120.2(a). The Supreme Court in *Sackett v. EPA*, 598 U.S.

11   651 (2023) adopted the plurality opinion of *Rapanos v. U.S.*, 547 U.S. 715 (2006), which held that

12   the Clean Water Act applies to "only those relatively permanent, standing or continuously flowing

13   bodies of water 'forming geographic[al] features' that are described in ordinary parlance as 'streams,

14   oceans, rivers, and lakes.'" *Rapanos*, 547 U.S. at 739. The Amended Complaint alleges that

15   Defendants discharge polluted storm water to Noisy Creek, Hall Creek, the Mad River, and the

16   Pacific Ocean, (Docket No. 20 at 14:22-24), and that each of these waters are waters of the United

17   States (*Id.* at 16:25-28.) Defendants do not contest the jurisdictional status of Hall Creek, the Mad

18   River and the Pacific Ocean, but they do challenge whether Noisy Creek is a water of the United

19   States. (Docket No. 21 at 18:6-8.) Without evidentiary support, Defendants contend that Noisy

20   Creek is "an ephemeral creek which dries up most of the year" and is therefore not relatively

21   permanent and not a water of the United States. (*Id.*) Whether Noisy Creek is relatively permanent

22   for the purposes of establishing Clean Water Act jurisdiction is an intensely factual question, and

23   one that is not appropriate to be resolved at this stage via a motion to dismiss, especially in light of

24   Defendants' total failure to support their factual assertions about Noisy Creek.

25       The question here is whether the Amended Complaint adequately alleges that Defendants'

26   discharges reach a water of the United States, and there is no question that it does. As an initial

27   matter, the Amended Complaint alleges that Defendants' discharges reach other undisputed waters

28   of the United States, not just Noisy Creek. (Docket No. 20 at 3:6-10; 14:22-24; 16:23-24; 17:27-

18:7.) The analysis can end there. However, the Amended Complaint also sufficiently alleges that Noisy Creek is a jurisdictional water under the Act, most obviously by directly alleging that Noisy Creek is a water of the United States. (Docket No. 20 at 16:25.) The Amended Complaint also alleges that Noisy Creek is a small creek that is a tributary to the Mad River. (*Id.* at 16:21-22, 14:22-24.) The Amended Complaint further alleges that Noisy Creek is a critical spawning and rearing habitat for coho salmon, from which the Court should infer that the creek is relatively permanent. (*Id.* at 3:27-4:2.) In contrast, Defendants have presented this Court with no evidence supporting their contention that Noisy Creek is not a water of the United States.

Defendants have relied primarily on the argument that each claim for relief in Plaintiff's Amended Complaint should be dismissed for failure to adequately allege that discharges of polluted storm water to a navigable water are occurring at the facility. As set forth above, Plaintiff has pled sufficient facts to support claims that Defendants have discharged and continue to discharge polluted storm water from the Facility to a navigable water in violation of the Clean Water Act. Self-serving statements made by Defendants in their own 2022 SWPPP and Annual Reports that no discharges of polluted storm water are occurring are simply not conclusive evidence, *much less judicially noticeable evidence*, that no discharges are in fact occurring. (Plaintiff's Objection to Request for Judicial Notice.) Accordingly, the Motion to Dismiss should be denied to the extent that Defendants have relied on this argument in their moving papers.

      *b.   Plaintiff's Amended Complaint Adequately Alleges the Numerous Ways in Which Defendants Violate the Conditions of the General Permit*

In addition to "discharge" violations, "it is settled that violations of a permit's 'requirements for retaining records of discharge sampling and for filing reports' can be the subject of a Clean Water Act citizen suit. *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 826, 832 (9th Cir. 2021) citing *NW Env't Advocs. v. City of Portland*, 56 F.3d 979, 988, 989 (9th Cir. 1995) ("[T]he plain language [of the Clean Water Act] authorizes citizens to enforce all permit conditions"). Where, as here, the discharger is subject to a NPDES permit, in order to adequately state a claim for relief, Plaintiff must allege that a condition of Defendants' permit was not complied with. *Inland Empire Waterkeeper* 17 F.4th at 833. Plaintiff has alleged numerous ways in which Defendants have violated the General Permit.

1    Defendants generally take issue with the specificity of the factual allegations in the Amended

2  Complaint, even though such specifics are not required under the pleading standards set forth in

3  *Twombly/Iqbal. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Defendants cite to no

4  authority requiring the specifics they demand from Plaintiff.

5    For example, Defendants take issue with paragraph 119 of the Amended Complaint, which

6  states that "Defendants' SWPPP does not include a compliant site map, adequate pollutant source

7  descriptions or assessments, adequate BMPs or descriptions of BMPs." (Docket No. 20 at 17:13-14.)

8  However, similar language to that found in paragraph 119 has been deemed adequate to support a

9  claim for relief, *see e.g., Waterkeeper v. SSA Terminals*, 702 F. Supp. 3d 903, 924 (C.D. Cal. 2023)

10  (finding plaintiff stated a claim for inadequate SWPPP by alleging a "failure to identify the

11  discharge locations for all drainage areas pictured on the map, describe the physical characteristics

12  of the drainage areas, list all pollution generating activities, like vehicle fueling, and include an

13  adequate site map").

14    Plaintiff's allegations about Defendants' other violations of the General Permit's conditions,

15  are similarly supported by other cases. *See, e.g., Ctr. for Cmty. Action & Env't Justice v. Friends of

16  Riverside Airport*, 2017 U.S. Dist. LEXIS 232218, at *12 (C.D. Cal. Sept. 28, 2017) (finding

17  plaintiff stated a claim for failure to use BAT/BMP by alleging "the storm water management

18  practices are inadequate, including a lack of sufficient structural controls, inadequate sediment

19  basins, and [defendant's] general failure to implement proper technologies"); *Coastal Env't Rts.

20  Found. v. Am. Recycling Int'l, Inc.*, 2017 U.S. Dist. LEXIS 202649, 2017 WL 6270395, at *11 (S.D.

21  Cal. Dec. 8, 2017) (finding plaintiff stated a claim for inadequate best management practices by

22  alleging defendant's exceeded NALs, failed to implement the minimum BMPs required by the

23  General Permit, and failed to adequately monitor and observe as required in violation of the General

24  Permit).

25    Here, Plaintiff's allegations are at least as specific as those found to be adequate in

26  *Waterkeeper, Ctr. for Cmty. Action & Env't Justice* and *Coastal Env't Rts. Found.* For example, in

27  paragraph 119 of the Amended Complaint, Plaintiff alleges that "Defendants' SWPPP does not

28  include a compliant site map, adequate pollutant source descriptions or assessments, adequate BMPs

or descriptions of BMPs," similar to the allegations that plaintiff in *Waterkeeper* made. In paragraph 87 of the Amended Complaint, Plaintiff alleges that "the Facility lacks structural control to prevent the discharge of water once contaminated," just as plaintiff in *Ctr. for Cmty. Action & Env't Justice* did. And in paragraph 122, Plaintiff alleges that "Defendants have failed to conduct required sampling and analysis of Qualified Storm Events, and has failed to analyze samples collected for all required pollutants at its Facility," similar to the allegations made by plaintiff in *Coastel Env't Rts. Found.* Defendants complain that these allegations are "threadbare" but fail to provide any legal authority that requires more information than was alleged by Plaintiff.

## VI.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss and its accompanying Request for Judicial Notice should be denied. If however, the court is inclined to grant any aspect of the Motion, Plaintiff requests that it be provided with an opportunity to amend the Amended Complaint to correct defects, if any, that are identified by the Court.


Dated: October 21, 2024                         Respectfully Submitted,

                                                LAW OFFICE OF WILLIAM CARLON


                                  By:    /s/ William N. Carlon

                                         William N. Carlon
                                         Attorneys for Plaintiff
                                         CALIFORNIANS FOR
                                         ALTERNATIVES TO TOXICS