1

2                    **IN THE UNITED STATES DISTRICT COURT**

3                  **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

4

5   **CALIFORNIANS FOR ALTERNATIVES TO**          CASE NO.  4:24-cv-04067 YGR
    **TOXICS,**
6                                                 **ORDER DENYING MOTION TO DISMISS**
                        Plaintiff,
7                                                 Re: Dkt. No. 21
                 v.
8

9   **KERNEN CONSTRUCTION CO., ET AL.,**

10                      Defendants.

11

12          Plaintiff Californians for Alternatives to Toxics ("CAT") brings this action under the

13  citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. §§

14  1251-1387 (the "Clean Water Act" or the "CWA") against defendants Kernen Construction Co.,

15  Bedrock Investments, LLC, Scott Farley, and Kurt Kernen.  Now before the Court is a motion to

16  dismiss all claims in the amended complaint.  (Dkt. No. 21.)  For the reasons set forth below, the

17  Court **DENIES** the motion.

18  **I.     BACKGROUND**

19          The following facts are from the amended complaint ("FAC," Dkt. No. 20), which the

20  Court construes as true for the purpose of resolving the present motion.

21          Plaintiff CAT is a California non-profit public benefit corporation that works to defend the

22  environment against the effects of toxic chemicals and to protect wildlife and natural resources of

23  California waters.  *Id.* ¶¶ 18-22.  Defendant Kernen Construction Co. is a general partnership

24  between defendants Scott Farley and Kurt Kernen that is organized under the laws of California.

25  *Id.* ¶¶ 25-27.  Defendant Bedrock Investments, LLC, is a limited liability company organized

26  under the laws of California.  *Id.*  Defendants allegedly conduct industrial activities at a 37-acre

27  facility that defendants own or operate at 2350 Glendale Drive, in McKinleyville, California

28  (hereinafter, "the facility").  *Id.* ¶¶ 5, 18, 79-80; *see also* Docket No. 20-1.  Most of these activities

occur outside in areas that are exposed to storm water and storm flows due to the lack of overhead coverage, functional berms, and other storm water controls. FAC ¶ 80.

CAT alleges that defendants are violating the State of California's General Industrial Permit for storm water discharges, State Water Resources Control Board National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 2014-0057-DWQ as amended by Order 2015-0122-DWQ & Order 2018-0028-DWQ (hereinafter, the "General Permit"), and thereby also are violating the CWA. *Id.* ¶¶ 5-8, 18-22. Those alleged violations involve prohibited discharges of pollutant-contaminated storm water from the facility into Noisy Creek and Hall Creek, which are tributaries of the Mad River, which ultimately flows into the Pacific Ocean. *Id.* ¶¶ 5-6, 86-89, 114, 133. These bodies of water are allegedly waters of the United States. *Id.* ¶¶ 110-13. The facility's February 2022 Storm Water Pollution Prevention Plan (hereinafter, "2022 SWPPP"), which has not been revised since February 2022, and defendants' annual reports from 2022-2024, state that there are no active discharge locations at the facility, but CAT is informed and believes that storm water associated with industrial activities is discharged during significant rain events from the facility's lower yard into Noisy Creek and Hall Creek from additional discharge points not identified in the 2022 SWPPP and annual reports. *Id.* ¶¶ 101-08, 114-17, 166-70. CAT's representatives have sampled discharges of polluted storm water from the facility's lower yard, and laboratory analysis of those samples indicates high levels of pollutants, including high levels of sediment, aluminum, and iron in excess of the limitations and restrictions set forth in the General Permit. *Id.* ¶¶ 107-08, 123-36.

Defendants' alleged violations of the General Permit and the CWA also arise out of their failure to comply with other requirements of the General Permit, such as the requirements to implement a compliant SWPPP; to implement best management practices ("BMP") using best available and best conventional treatment technologies to reduce or prevent pollutants in storm water discharges at the facility; to implement an adequate monitoring plan and to conduct monitoring of discharges at the facility; and to comply with the General Permit's reporting requirements. *See id.* ¶¶ 123-71. CAT alleges that these violations of the General Permit have

United States District Court
Northern District of California

1    caused the continuing decline in water quality of the impacted waters, as well as harm to coho

2    salmon.  *See id.* ¶¶ 10-17.

3        On or about March 14, 2024, CAT provided written notice to defendants, via certified

4    mail, of their alleged violations of the General Permit and CWA and of its intention to file suit

5    against defendants after the expiration of the 60-day notice period.  *Id.* ¶ 2.  That written notice is

6    attached to, and incorporated into, the FAC.  *See id*; *see also* Docket No. 20-1.  The written notice

7    sets forth the specific significant rain events during which defendants allegedly discharged

8    polluted storm water at the facility in violation of the General Permit.  *See id.*, Attachment A.

9        CAT filed the initial complaint in this action on July 5, 2024.  After defendants filed an

10   initial motion to dismiss, CAT filed the FAC, which is the operate complaint.[1]  CAT asserts the

11   following five claims therein alleging violations of General Permit and:

12       (1) 33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f) based on discharges of contaminated

13   storm water into Hall Creek, Noisy Creek, the Mad River, and the Pacific Ocean;

14       (2) 33 U.S.C. §§ 1311 and 1342 based on a failure to develop and implement a compliant

15   SWPPP for the facility;

16       (3) 33 U.S.C. §§ 1311 and 1342 based on a failure to develop and implement best

17   management practices using best available and best conventional treatment technologies to reduce

18   or prevent pollutants in storm water discharges at the facility;

19       (4) 33 U.S.C. §§ 1311 and 1342 based on a failure to implement an adequate monitoring

20   plan and to conduct monitoring of discharges at the facility; and

21       (5) 33 U.S.C. §§ 1311 and 1342 based on a failure to comply with the reporting

22   requirements of the General Permit.  CAT seeks declaratory and injunctive relief, civil penalties,

23   and attorneys' fees, among other remedies.

24       This action is related to two others that CAT previously filed against the same defendants

25   for CWA violations at the facility during periods of time that precede and do not overlap with the

26   time period covered by FAC in this case.  Those two actions, which are now terminated, are

27   _____

28   [1] Given the filing of the FAC, the Court **DENIES AS MOOT** the motion to dismiss the initial
     iteration of the complaint, Docket No. 17.

*Californians for Alternatives to Toxics v. Kernen Construction Co., et al.*, Case No. 4:16-cv-04007-YGR and *Californians for Alternatives to Toxics v. Kernen Construction Co., et al.*, Case No. 4:20-cv-01348-YGR.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), an action may be dismissed for "failure to state a claim upon which relief can be granted."  Dismissal is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  The complaint must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When considering a motion to dismiss, a court must accept all material allegations in the complaint as true and construe them in the light most favorable to plaintiff.  *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

## III.     REQUEST FOR JUDICIAL NOTICE

Generally, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion" unless it treats the motion as one for summary judgment under Rule 56 and provides all parties with a reasonable opportunity to present all material pertinent to such a motion.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  However, a court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," so long as the fact being judicially noticed is "not subject to reasonable dispute."  Fed. R. Evid. 201(b).

Defendants request that the Court take judicial notice of the following documents:

1.     Exhibit A: The 2022 SWPPP that defendants filed with the State Water Resources Control Board ("SWRCB").

2.     Exhibit B: The 2021-2022 Annual Report for Storm Water Discharges that defendants filed with the SWRCB.

3.     Exhibit C: The 2022-2023 Annual Report for Storm Water Discharges that defendants filed with the SWRCB.

United States District Court
Northern District of California

United States District Court
Northern District of California

4.    Exhibit D: The 2023-2024 Annual Report for Storm Water Discharges that defendants filed with the SWRCB.

5.    Exhibit E:  The State of California's State Water Resources Control Board NPDES General Permit for Storm Water Discharges Associated with Industrial Activities, Order WQ 2014-0057-DWQ, as amended by Order 2015-0122-DWQ & Order WQ 2018-DWQ (i.e., the General Permit).

*See* Docket No. 22.

CAT objects to defendants' request for judicial notice only with respect to Exhibits A through D on the grounds that defendants seek to "improperly ask the Court to take notice of the truth of the matters asserted within those documents, and because the existence of these documents are irrelevant to the Motion to Dismiss."  Docket No. 30 at 2.

The Court finds that it can take judicial notice of the fact that Exhibits A through E were filed with or issued by the SWRCB, which is a state administrative agency.  No party disputes that these documents are subject to judicial notice for that purpose.  *See San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 732 (N.D. Cal. 2011) ("It is well established that records, reports, and other documents on file with administrative agencies—such as the State Water Resources Control Board—are judicially noticeable.").  However, the Court does not, and cannot, take judicial notice of Exhibits A through D for the truth of the matters recited therein because the allegations in the FAC, when construed liberally and in CAT's favor, dispute the veracity of matters stated in those documents.  *See Lee*, 250 F.3d at 689 (holding that district court erred in taking judicial notice of a court document for the truth of the matters recited therein for the purpose of resolving a Rule 12(b)(6) motion because the plaintiff's allegations, when accepted as true and construed in the plaintiff's favor, disputed the validity and truth of the statements in the court document).

## IV.    DISCUSSION

Defendants move to dismiss all claims in the FAC on the grounds that "they do not satisfy the federal pleading requirements" and are based on conclusory allegations that are directly contradicted by the documents that are the subject of their request for judicial notice.  *See* Docket

No. 21 at 10. The Court will address defendants' arguments on a claim-by-claim basis below. Before doing so, the Court first provides a general overview of the provisions of the CWA and General Permit that are at issue in the FAC.

The purpose of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). "Section 301(a) of the CWA prohibits the 'discharge of any pollutant' from any 'point source' into 'navigable waters' unless the discharge complies with certain other sections of the CWA." *Nat. Res. Def. Council, Inc. v. County of Los Angeles,* 725 F.3d 1194, 1198 (9th Cir. 2013) (citing 33 U.S.C. § 1311(a)). The National Pollution Discharge Elimination System ("NPDES"), 33 U.S.C. § 1342, functions as "[a] linchpin of the CWA's regulatory scheme," authorizing "certain discharges of pollutants only if in compliance with government-issued permits, and impos[ing] related monitoring and reporting requirements." *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1145 (9th Cir. 2000). An NPDES permit may take the form of a general permit, which "is issued for an entire class of hypothetical dischargers in a given geographical region and is issued pursuant to administrative rulemaking procedures." *Alaska Cmty. Action on Toxics v. Aurora Energy Servs., LLC*, 765 F.3d 1169, 1171 (9th Cir. 2014) (citations omitted).

Industrial storm water discharges in California are subject to the General Permit issued by the State of California's State Water Resources Control Board. The General Permit requires permittees to, among other things: prevent discharges of storm water that cause or contribute to an exceedance of applicable water quality standards; develop and implement a SWPPP; implement best management practices using best available and best conventional treatment technologies to reduce or prevent pollutants in storm water discharges; develop and implement a monitoring program; and file an annual report with the State Water Resources Control Board certifying information relating to compliance with the General Permit. *See S.F. Baykeeper v. Levin Enterprises, Inc.*, 12 F. Supp. 3d 1208, 1212 (N.D. Cal. 2013).

"[A] permittee violates the CWA when it discharges pollutants in excess of the levels specified in the permit, or where the permittee otherwise violates the permit's terms." *Nat. Res. Def. Council, Inc. v. Cty. of Los Angeles*, 725 F.3d at 1204. Because "[t]he plain language of [33

6

1    U.S.C. § 1365] authorizes citizens to enforce all permit conditions," any violation of an NPDES

2    permit (such as the General Permit) can be remedied via citizen suit.  *Nw. Envtl. Advocates v. City*

3    *of Portland*, 56 F.3d 979, 986 (9th Cir. 1995).

4        **A.    Claim 1: Discharges of Polluted Storm Water**

5        CAT's first claim for relief is for violations of the General Permit and CWA based on

6    discharges of polluted storm water at the facility and into Hall Creek, Noisy Creek, the Mad River,

7    and the Pacific Ocean during each significant storm event since May 2, 2023, in excess of the

8    limits and restrictions set forth in the General Permit.  FAC ¶¶ 123-36.

9        To state a claim for a violation of the CWA based on an unlawful discharge of storm water,

10    a plaintiff must allege that (1) a person (2) discharged (3) a pollutant (4) to navigable waters of the

11    United States (5) from a point source (6) without a permit or in violation of a permit.  *See San*

12    *Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 754 (N.D. Cal. 2011) (*citing*

13    *Comm. to Save Mokelumne River v. East Bay Mun. Util. Dist.*, 13 F.3d 305, 308 (9th Cir.1993)).

14        Defendants move to dismiss this claim on the ground that CAT has not alleged sufficient

15    facts to satisfy the second and fourth elements.

16        With respect to the second element, which requires allegations of a "discharge," defendants

17    make two arguments.  First, defendants contend that the "discharge" element for is not met

18    because the 2022 SWPPP and annual reports that are the subject of their request for judicial notice

19    state that there are no active discharge locations at the facility because all discharge locations at

20    the facility were sealed or plugged.  This argument does not persuade.  As discussed above, the

21    Court cannot take judicial notice of the statements in the 2022 SWPPP and annual reports for their

22    truth, because the truth of those statements is subject to reasonable dispute in light of the

23    allegations in the FAC, which challenge the sufficiency and accuracy of the 2022 SWPPP and

24    annual reports with respect to discharges at the facility.   *See* Fed. R. Evid. 201(b) (providing that

25    a district court may take judicial notice of a fact that is "not subject to reasonable dispute"); *see*

26    *also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (holding that "a

27    court cannot take judicial notice of disputed facts contained in . . . public records").  The Court

28

United States District Court
Northern District of California

7

1    must accept CAT's allegations that there are active discharge locations at the facility as true for

2    the purpose of resolving the present motion.

3        Second, defendants contend that the allegations in the FAC do not raise the inference that

4    there have been discharges at the facility in violation of the General Permit since May 2, 2023,

5    because CAT's allegations are mere conclusions devoid of "any facts as to 'where' and 'when'

6    and 'who'" with respect to each alleged discharge. *See* Docket No. 21 at 11. Defendants contend

7    that, to state a claim for unlawful discharges in violation of the General Permit and CWA, CAT

8    must plead the specific dates on which each discharge occurred, the exact location where each

9    discharge occurred, and the manner in which CAT determined that each discharge violates the

10   CWA and General Permit. This argument is unavailing. Defendants have cited no authority that a

11   plaintiff asserting a CWA claim for unlawful discharges must allege facts with the level of

12   specificity that defendants urge the Court to require.[2] Defendants' argument that CAT must allege

13   the "where," "when," and "who" with respect to each discharge appears to be an implicit reference

14   to Rule 9(b)'s heightened pleading requirements, which apply to allegations of fraud or mistake.

15   *See* Fed. R. Civ. P. 9(b). Because there are no allegations of that nature in the FAC, the Court

16   declines to assess the sufficiency of the allegations in the FAC through the lens of Rule 9(b).

17       After carefully reviewing the FAC in its entirety, the Court finds that the FAC raises the

18   inference that there have been discharges of polluted storm water at the facility during significant

19   rain events since May 2, 2023. CAT alleges that, during every significant rain event since May 2,

20   2023, defendants have discharged polluted water from the facility and into Hall Creek and Noisy

21   Creek, which are tributaries of the Mad River, which ultimately flows into the Pacific Ocean. *See*

22   FAC ¶¶ 5-6, 90, 95, 101-04. These discharges are not reflected in defendants' 2022 SWPPP and

23   2022-2024 annual reports, as those documents state that there are no active discharge locations at

---

25   [2] The cases that defendants rely upon set forth the general federal pleading standards,
     which provide that a plaintiff must allege sufficient facts to state a claim for relief that is plausible
26   on its face. *See Bell Atlantic Corp v Twombly*, 550 U.S. 544 (2007); *Ashcroft v Iqbal*, 556 U.S.
     662 (2009); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008); *Telesaurus VPC,*
27   *LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010); *Myvett v. Litton Loan Servicing, LP*, 2010 U.S.
     Dist. LEXIS 18753, *4 (N.D. Cal. Mar. 3, 2010). None of those cases addresses a claim under the
28   CWA or otherwise sheds light on the question of whether the facts that CAT has alleged in the
     FAC are sufficient to state a claim under the CWA for unlawful discharges.

United States District Court
Northern District of California

the facility.  *See id.*  CAT listed the date of each significant rain event during which it claims

discharges occurred at the facility in the written notice that it sent to defendants before filing this

action, which is incorporated by reference into the FAC.  *See id.* ¶ 2; Docket No. 20-1, Attachment

A.  CAT also alleges facts describing the locations where the discharges occurred (e.g., the

facility's lower yard), as well as how it discovered that the discharges contain high levels of

pollutants (e.g., by analyzing samples taken of the alleged discharges).  *See* FAC ¶¶ 15-16, 102-

107.  CAT further alleges that defendants received on May 21, 2024, a notice of violation from the

Regional Water Quality Control Board stating that defendants violated the General Permit's

prohibitions with respect to industrial storm water discharges at the facility.  *See id.* ¶¶ 92-93.  The

Court concludes that the foregoing allegations are sufficient to satisfy the "discharge" element of a

claim for unlawful discharges.  Defendants have cited no authority that compels a different

conclusion.

With respect to the fourth element, which requires allegations that defendants' discharges

added a pollutant to "navigable waters of the United States," defendants urge that the FAC cannot

raise the inference that Noisy Creek is a navigable "water of the United States" because such

waters are "permanent" and, according to them, Noisy Creek "dries up most of the year."[3]  *See*

Docket No. 21 at 19.  Defendants contend that CAT "must be forced to plead that [Noisy Creek] is

permanent."  *See id.*

The CWA defines "navigable waters" as "waters of the United States."  *See Sackett v.

Env't Prot. Agency*, 598 U.S. 651, 671 (2023) ("*Sacket*") (citing 33 U.S.C. § 1362(7)).  In 2023,

the Supreme Court held in *Sackett* that the term "waters of the United States" encompasses "only

those relatively permanent, standing or continuously flowing bodies of water 'forming

geographic[al] features' that are described in ordinary parlance as 'streams, oceans, rivers, and

lakes.'"  *See id.* (quoting *Rapanos v. Unites States*, 547 U.S. 715, 739 (2006)).  Thereafter, the

federal regulations defining "waters of the United States" were revised to conform to the Supreme

United States District Court
Northern District of California

---

[3] Defendants cite no legal or factual support for this assertion.

1  Court's holding in *Sackett*.  *See* 33 C.F.R. § 328.3(a) (2023); 40 C.F.R. § 120.2(a) (2023).  Under

2  those regulations, "waters of the United States" includes, in relevant part:

3              (1) Waters which are:

4                  (i) Currently used, or were used in the past, or may be
                   susceptible to use in interstate or foreign commerce,

5                  including all waters which are subject to the ebb and flow
                   of the tide;

6
                   (ii) The territorial seas; or

7
                   (iii) Interstate waters;

8
              (2) Impoundments of waters otherwise defined as waters of the

9             United States under this definition, other than impoundments of
              waters identified under paragraph (a)(5) of this section;

10
              (3) Tributaries of waters identified in paragraph (a)(1) or (2) of this

11            section that are relatively permanent, standing or continuously
              flowing bodies of water[.]

12

13  *See id.*

14         Here, CAT alleges that defendants have violated the General Permit and CWA because the

15  facility allegedly has discharged during significant rain events since May 2, 2023, pollutant-

16  contaminated storm water into Hall Creek and Noisy Creek, which are tributaries of the Mad

17  River, which in turn flows into the Pacific Ocean.  *See* FAC ¶¶ 5-6.  CAT alleges that each of

18  those bodies of water, including Noisy Creek, are waters of the United States.  *See id.* ¶¶ 6, 10-13.

19         The only body of water that defendants argue does not satisfy the definition of "waters of

20  the United States" is Noisy Creek.  Defendants do not argue that Hall Creek, the Mad River, or the

21  Pacific Ocean are not waters of the United States, thus conceding for the purpose of the present

22  motion that those bodies of water *do* constitute waters of the United States.  Because it is

23  undisputed for the purpose of the present motion that the bodies of water alleged in the FAC other

24  than Noisy Creek fall within the definition of "waters of the United States," the "navigable waters"

25  element is met.  Accordingly, CAT's claim for unlawful discharges cannot be dismissed for failure

26  to satisfy the "navigable waters" element even if were the case, as defendants contend, that CAT

27  has failed to plausibly allege that Noisy Creek falls within the definition of "waters of the United

28  States."

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Court is not persuaded that CAT has failed to adequately plead that Noisy Creek is a water of the United States. Tributaries of waters of the United States themselves fall within the definition of "waters of the United States" if they are "relatively permanent," standing, or continuously flowing bodies of water. *See* 33 C.F.R. § 328.3(a)(3) (2023). The allegations in the FAC plausibly suggest that Noisy Creek satisfies that definition. As noted, CAT alleges that Noisy Creek is a "tributary" of the Mad River, which CAT alleges, and defendants do not dispute, is a water of the United States. *See* FAC ¶¶ 5-6, 11, 110-13. CAT also alleges that Noisy Creek is a critical spawning and rearing habitat for coho salmon, *see id.* ¶ 11, which suggests that the creek has at least a seasonal water flow. The foregoing is enough to raise the inference that Noisy Creek is a "relatively permanent" tributary of a water of the United States, and that it is, therefore, a water of the United States. *See San Francisco Baykeeper v. City of Sunnyvale*, No. 5:20-CV-00824-EJD, 2023 WL 8587610, at *4 (N.D. Cal. Dec. 11, 2023) (holding that tributary creeks to a water of the United States that "flow intermittently in the sense that they flow seasonally, whereby they contain a continuous flow during some months and no flow during dry months" were "relatively permanent" and thus were "waters of the United States").

Defendants further argue that, because CAT has not alleged that Noisy Creek is a "*permanent* tributary" of the Mad River, the FAC does not raise the inference that Noisy Creek is a water of the United States and CAT's claim for unlawful discharges must therefore be dismissed. *See* Docket No. 33 at 5 (emphasis added); *see also* Docket No. 21 at 19. However, defendants have not cited any case in which a court has dismissed a CWA claim for unlawful discharges for failure to allege that the body of water into which the discharges were allegedly made was "permanent."[4] Accordingly, the Court declines to do so here.

---

[4] The only case that defendants cite is *Sackett*, 598 U.S. at 671-79, where, as noted, the Supreme Court held that the term "waters of the United States" encompasses "only those *relatively permanent*, standing or continuously flowing bodies of water 'forming geographic[al] features' that are described in ordinary parlance as 'streams, oceans, rivers, and lakes.'" *See id.* at 671 (citation omitted, emphasis supplied). *Sackett* does not support defendants' argument that CAT must plead that Noisy Creek is a "permanent" tributary to raise the inference that it is a "water of the United States," because the Supreme Court did not hold in that case that a body of water must be "permanent" to be a "water of the United States." Instead, the Supreme Court used the term "relatively permanent" when defining "waters of the United States." *See id.* at 671. For the reasons set forth above, the Court has found that the allegations in the FAC are sufficient to raise

11

The Court **DENIES** defendants' motion to dismiss CAT's claim for unlawful discharges of storm water.

### B.    Claim 2: Failure to Implement Adequate SWPPP

CAT's second claim for relief is for violations of the General Permit and CWA based on defendants' alleged failure to develop and implement a compliant SWPPP for the facility.  FAC ¶¶ 137-45.  This claim is based on allegations that the facility's SWPPP has not been updated since 2022 to reflect current conditions at the facility, which include discharges during significant rain events since May 2, 2023, at locations at the facility that are not identified in the 2022 SWPPP; and that the 2022 SWPPP does not include a compliant site map, pollutant source descriptions or assessments, or best management practices.  *See, e.g., id.* ¶¶ 5-6, 103-05, 116-19.

Defendants argue that this claim must be dismissed because it assumes that there have been active discharge locations at the facility since May 2, 2023, that are not identified in the 2022 SWPPP.  *See* Docket No. 33 at 5-6.  Thus, because the FAC does not raise the inference that there have been any discharges at the facility since May 2, 2023, based on the same arguments they raised in connection with CAT's first claim for relief, the FAC does not raise the inference that the 2022 SWPPP is inadequate or non-compliant on the basis that it fails to reflect the current conditions and active discharge locations at the facility.  *See id.*

For the reasons discussed in detail above in connection with CAT's first claim for relief, the Court has found that the FAC raises the inference that there have been storm water discharges at the facility during significant rain events since May 2, 2023, that are not reflected in the 2022 SWPPP.  Defendants' argument thus fails.  The Court **DENIES** defendants' motion to dismiss this claim.

### C.    Claim 3: Failure to Implement Adequate Best Management Practices

CAT's third claim for relief is for violations of the General Permit and CWA based on a failure to develop and implement best management practices that achieve the best available and

---

the inference that Noisy Creek is a "relatively permanent" tributary to a body of water that CAT alleges, and defendants do not dispute, is a water of the United States.  CAT has thus plausibly alleged that Noisy Creek is "water of the United States."

United States District Court
Northern District of California

best conventional treatment technology ("BAT/BCT") standards at the facility.  FAC ¶¶ 146-55.  This claim is premised on allegations that defendants have discharged storm water from the facility containing concentrations of pollutants exceeding the BAT/BCT level of control during every significant rain event since May 2, 2023, and have thus failed to reduce or prevent pollutants associated with the facility's industrial activities from being discharged to waters of the United States through the implementation of best management practices that achieve the technology-based BAT/BCT treatment standards.  *See id.*

Defendants argue that this claim must be dismissed because it is premised on the theory that the facility's best management practices do not comply with the General Permit because there have been discharges of polluted storm water at the facility since May 2, 2023.  *See* Docket No. 21 at 23-24.  Defendants contend that, because the FAC does not raise the inference that there have been any discharges at the facility since May 2, 2023, based on the same arguments that they raised in connection with CAT's first claim for relief, the FAC does not raise the inference that the facility's best management practices are inadequate to prevent or reduce polluted storm water discharges at the facility.  *See id.*

This argument is unavailing.  For the reasons discussed in detail above in connection with CAT's first claim for relief, the Court has found that the FAC raises the inference that there have been discharges of polluted storm water at the facility during significant rain events since May 2, 2023.  The Court **DENIES** defendants' motion to dismiss this claim.

### D.    Claim 4: Failure to Conduct Monitoring

CAT's fourth claim for relief is for violations of the General Permit based on a failure to implement an adequate monitoring implementation plan and to collect samples of storm water discharges at the facility required by the General Permit.  FAC ¶¶ 156-63.  This claim is premised on allegations that defendants have failed to collect samples of storm water discharges at the facility's lower yard during each reporting period since at least May 2, 2023.  *See id.*

Defendants argue that this claim must be dismissed because it presupposes that there have been discharges at the facility since May 2, 2023.  *See* Docket No. 21 at 24.  Again, defendants contend that, because the FAC does not raise the inference that there have been any discharges at

the facility since May 2, 2023, based on the same arguments that they raised in connection with CAT's first claim for relief, the FAC does not raise the inference that they violated the General Permit by failing to collect samples of storm water discharges since May 2, 2023. *See id.*

For the reasons discussed in detail above in connection with CAT's first claim for relief, the Court has found that the FAC raises the inference that there have been storm water discharges at the facility during significant rain events since May 2, 2023. Defendants' argument thus fails. Accordingly, the Court **DENIES** defendants' motion to dismiss this claim.

### E.      Claim 5: Failure to Comply with Reporting Requirements

CAT's fifth claim for relief is for violations the General Permit and CWA based on a failure to comply with the General Permit's reporting requirements. FAC ¶¶ 164-65. This claim is premised on allegations that the annual reports that defendants submitted for the years 2022 through 2024 are inadequate and non-compliant with the General Permit because they state that there are no storm water discharge locations at the facility even though the facility has several discharge locations in the lower yard. *See id.*

Defendants argue that this claim must be dismissed because it presupposes that there have been discharges at the facility since May 2, 2023. *See* Docket No. 21 at 24. Yet again, defendants contend that, because the FAC does not raise the inference that there have been any discharges at the facility since May 2, 2023, based on the same arguments that they raised in connection with CAT's first claim for relief, the FAC does not raise the inference that their annual reports are non-compliant for stating that there are no storm water discharge locations at the facility. *See id.*

This argument fails. For the reasons discussed in detail above in connection with CAT's first claim for relief, the Court has found that the FAC raises the inference that there have been storm water discharges at the facility during significant rain events since May 2, 2023. Accordingly, the Court **DENIES** defendants' motion to dismiss this claim.

### V.      CONCLUSION

For the foregoing reasons, the Court **DENIES** defendants' motion to dismiss. Defendants shall file an answer by November 22, 2024.

United States District Court
Northern District of California

1    A case management conference is scheduled for December 9, 2024, at 2:00 p.m.  The

2  conference will occur over the Zoom platform.  The parties and members of the public may access

3  the webinar information at https://www.cand.uscourts.gov/ygr.

4    A Joint Case Management Conference Statement is due by December 2, 2024.  Given the

5  history of these cases, the parties should focus in particular on ways to efficiently resolve the

6  issues in dispute.

7    This order terminates docket numbers 17 and 21.

8    **IT IS SO ORDERED.**

9  Dated:  November 8, 2024

10
11                    YVONNE GONZALEZ ROGERS
                    UNITED STATES DISTRICT COURT JUDGE
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28