Law Office of William Carlon
437 Post Street, Napa, CA 94559
william@carlonlaw.com
(530) 514-4115

March 19, 2025

The Honorable Yvonne Gonzalez Rogers
U.S. District Court for the Northern District of California
1301 Clay Street
Oakland, CA 94612

Dear Judge Gonzalez Rogers:

    By this letter, Plaintiff Californians for Alternatives to Toxics requests a pre-filing conference regarding a motion for partial summary judgment pursuant to Rule 56 of the Rules of Civil Procedure, that establishes the liability of Defendants under Plaintiff's First Claim for Relief (Discharges of Contaminated Storm Water Associated with Industrial Activity), Second Claim for Relief (Failure to Develop and Implement an Adequate Storm Water Pollution Prevention Plan), Fourth Claim for Relief (Failure to Develop and Implement an Adequate Monitoring Implementation Plan), and Fifth Claim for Relief (Failure to Complete Required Reporting). Plaintiff also moves for partial summary judgment that it has standing to bring this action. Plaintiff proposes to hold the requested pre-filing conference on **March 28, 2025** at 2:00 p.m.

## RELEVANT FACTS AND PROCEDURAL HISTORY

    Defendants own and operate an approximately 37-acre industrial facility located at 2350 Glendale Drive near McKinleyville, California. The facility is used to manufacture and store rock aggregate products. The Facility is also used, and has been used in the past, for storing scrap roofing shingles, scrap metal, soil, and organic debris. Most of these activities occur outside in areas that are exposed to storm water and storm flows due to the lack of overhead coverage, functional berms, and other storm water controls. During every rain event that generates runoff, polluted storm water is generated at the Facility when it comes into contact with these industrial materials and activities. In 2016, Plaintiff brought a citizen suit to enforce the Clean Water Act and General Permit against Defendants, and in 2017 the parties resolved the litigation by settlement. Defendants failed to comply with the terms of that agreement, and on February 21, 2020, Plaintiff filed its second lawsuit in an attempt to get Defendants to comply with the Clean Water Act and General Permit.

    In that action, Defendants were found liable for a total of **9,461 violations** of the Clean Water Act occurring between November 14, 2017 and December 3, 2020. (4:20-cv-01348-YGR, Docket No. 58 at 9.) Rather than address the sources of the pollution, or install management practices that would reduce the pollution discharged, Defendants put all their resources into containing the storm water, and gambled that they would never discharge again. They now claim that they contain all of the polluted storm water generated on site, and have gone to a "no-discharge status." (Docket No. 21 at 8:4.) However, in another filing in the prior action, Defendants conceded that it would be impossible for them to *ever* claim that they were a "no-discharge" Facility under the General Permit's Notice of Non-Applicability ("NONA") provisions. (4:20-cv-01348-YGR, Docket No. 60 at 6:28-7:2.) Instead, Defendants appear to

Honorable Yvonne Gonzalez Rogers
March 19, 2025
Page 2

have invented their own "no-discharge" standard, one untethered to the NONA provisions of the General Permit, and have refused to "explain what that means or how it relates to the requirements of the CWA and General Permit." (*Id.* at 7:26-27.)

The upshot of Defendants' invented claim of "no discharge status" is that Defendants' compliance documents, such as their Storm Water Pollution Prevention Plan ("SWPPP") do not even attempt to map and disclose discharge locations and do not attempt to monitor and sample storm water discharges. However, time has demonstrated that Defendants' initial concession that obtaining "no discharge" status under the General Permit would be impossible is correct. Defendants' Facility *does* in fact continue to discharge stormwater, which means that Defendants have been discharging industrial stormwater in violation of their permit since May of 2023.

Plaintiff now brings this third action because neighbors of the Facility have documented, repeatedly, that polluted storm water has been discharging from Defendants' Facility into Noisy Creek. Plaintiff's own investigation has revealed additional discharges of storm water associated with Defendants' industrial activities that are not sampled, or even acknowledged by Defendants. Samples of these discharges have been collected and analyzed, and have been found to contain levels of pollutants that are remarkably similar to what was detected in Defendants' historic storm water sampling – exceedingly high sediment, aluminum, iron, and other pollutants. Defendants will no doubt contend that there is a dispute of material fact with respect to whether their facility discharges, but the videos, photographs, and affidavits of percipient witnesses will demonstrate that the dispute cannot be genuine. This is corroborated by the Regional Board's May 21, 2024 Notice of Violation and Investigative Order alleging similar violations of the General Permit that Plaintiff had raised in its May 14, 2024 60-Day Notice Letter, (Docket No. 20-1).

## LEGAL STANDARD

The Clean Water Act imposes strict liability for NPDES permit violations. *Inland Empire Waterkeeper v. Corona Clay Co*, 2019 U.S. Dist. LEXIS 166883, 2019 WL 4233584, at *1 (C.D. Cal. June 10, 2019) (quoting *Santa Monica Baykeeper v. Kramer Metals, Inc.*, 619 F. Supp. 2d 914, 919 (C.D. Cal. 2009)). Moreover, "the Clean Water Act allows citizen suits based on violations of any conditions of an NPDES permit, even those which are purely procedural." *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1151 (9th Cir. 2000). Therefore, Plaintiff need only show that Defendants are properly subject to the General Permit, which is a NPDES permit, and that Defendants have violated one or more of the many terms of that permit. For the reasons below, it is highly likely that Plaintiff will prevail on each of its claims.

Because Defendants have taken such an extreme position with respect to their defense of Plaintiff's claims, all Plaintiff needs to do to prevail is to prove that there has been at least one discharge from the Facility between May 2, 2023 and the present. In fact, Plaintiff has collected evidence of over 20 such discharges during that period. Defendants' neighbors have taken videos, photographs, and notes of their observations, including rain data, documenting Defendants' repeated discharges into Noisy Creek between January 2024 and August 2024.

Honorable Yvonne Gonzalez Rogers
March 19, 2025
Page 3

Plaintiff intends to use these videos, photographs, and notes to support its claims for summary judgment.

Defendants claim that they have not discharged since 2021, and so they have not sampled any discharges, or identified any discharge locations on their storm water plans and maps, they have not put into place any treatment control technologies in response to discharges, and they do not report any such discharges to the Regional Board. If Plaintiff can establish at least one discharge event during that time period, Defendants will be found liable for not only that discharge, but also each intervening day of violation for operating the Facility without complying with all requirements of the General Permit.

In addition to the direct discharges into Noisy Creek, Plaintiff's investigation has revealed another point of discharge into an unnamed tributary to Noisy Creek from the Facility that Defendants do not acknowledge, and therefore do not sample, or include in any of their required reporting, plans, or mapping. Plaintiff has documented via video and photo, on a number of occasions, storm water discharges coming from Defendants' upper yard from a pipe flowing north to south. Defendants contend that this pipe is purely a bypass pipe, only transporting roadside drainage from Glendale Drive north of the Facility. However, Plaintiff has documented both the inflow and outflow of this pipe after periods of intense rainfall at the Facility, and will present video and photographic evidence that the water flowing into the pipe (the roadside drainage) is relatively clear, while the water flowing out of the southern outfall of the same pipe is highly turbid, and shares the same characteristics as the industrial storm water ponded above the pipe, and around drop inlets on Defendants' Facility.

## CONCLUSION

Plaintiff would like to move for partial summary judgment on the issues outlined above in order to streamline the issues remaining for trial. The evidence is not subject to reasonable dispute, because the videos and photographs show what they show – discharges from Defendants' industrial facility. Thus, this matter is ripe for summary judgment.

Respectfully submitted,

William Carlon