UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS<br><br>Plaintiff,<br><br>vs.<br>KERNEN CONSTRUCTION CO., et al,<br><br>Defendants. | Case Number: 3:24-cv-04067-SK-TSH<br><br>**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER** |

The parties to the above-entitled action jointly submit this JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER pursuant to the Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9.

1.  Jurisdiction & Service

This Court has subject matter jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (action arising under the laws of the United States). Venue is proper in the Northern District of California pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the alleged violations is located within this judicial district. Pursuant to Local Rule 3-2(e), intra-district venue is proper in San Francisco, California because the sources of the violations are located within Humboldt County. All parties have been served.

All parties have consented to the jurisdiction of a magistrate judge. (Docket Nos. 59 & 60.)

2.   Plaintiffs' Facts

This case is the third Federal Water Pollution Control Act ("Clean Water Act" or "Act") citizen suit enforcement action filed by CATs under Section 505 of the Clean Water Act, 33 U.S.C. § 1365 against Defendants. The Complaint alleges that Defendants have violated and continue to violate Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) by discharging pollutants from point sources at Defendants' facility, located at 2350 Glendale Drive in McKinleyville, California, ("Facility") to waters of the United States in violation of State Water Resources Control Board National Pollutant Discharge Elimination System General Permit No. CAS000001, State Water Resources Control Board Water Quality Order no. 2014-0057-DWQ as amended by Order 2015-0122-DWQ and Order 2018-0028-DWQ ("General Permit").

The first case, filed in 2016, 4:16-cv-04007-YGR, was resolved by way of a consent decree. The second case was filed in 2020, 4:20-cv-01348-YGR, and Defendants admitted liability to the claims brought by Plaintiff. There, the Court assessed a civil penalty of $2,087,750. The Court also issued a permanent injunction against Defendants that expired May 1, 2023.

In this action, Plaintiff alleges that the violations continue, and that 1) Defendants discharge contaminated storm water from the Facility in violation of the General Permit's effluent limitations, receiving water limitations, and discharge prohibitions; 2) Defendants have failed to prepare, implement, review, and update a compliant storm water pollution prevention plan; 3) Defendants have failed to develop and implement the best available and best conventional treatment technologies at the Facility; 4) Defendants have failed to implement an adequate monitoring implementation plan and have failed to conduct all required monitoring at the Facility; and 5) Defendants have failed to comply with the reporting requirements of the General Permit.

Based on these allegations, Plaintiff seeks civil penalties, injunctive relief, and reasonable fees and costs as authorized by the Act, 33 U.S.C. § 1365(d).

The principal factual issues in dispute, at this time, include:

1. Whether Defendants discharge storm water associated with industrial activities from their Facility;
2. Whether Defendants' storm water pollution prevention plan accurately describes how storm water is managed at the Facility;
3. Whether the BMPs that Defendants have implemented are effective at containing and treating storm water;
4. Whether Defendants' monitoring and implementation plan includes all of the required information under the Permit; and,
5. Whether Defendants' annual reports are accurate and contain all of the required information under the Permit.

Defendants Separate Statement:

Defendants are a small to modest construction company in Humboldt County, CA. This is the third suit brought by California Alternative to Toxics ("CATS") against Defendants. The first suit brought in 2016, 4:16-cv-04007-YGR, was resolved by way of a consent decree. The consent decree, required Defendants to follow requirements demanded by Plaintiff and its "consultant" who was neither a Qualified Stormwater Practitioner ("QSP") nor a Qualified Industrial Stormwater Practitioner ("QISP"). The results from following Plaintiff's demands raised the Numeric Action Levels ("NALs").

Plaintiff sent a Notice of Violation letter to Defendants regarding the increase of their NALS during the time they were *following* Plaintiff's required changes. Defendants notified Plaintiff that they were going to a status of being a de facto no-discharge facility and would not consider following the failed requirements demanded again by Plaintiff. In response, Plaintiff filed its second lawsuit, 4:20-cv-01348-YGR. , Defendants then made the decision that the only way to stop that litigation and avoid all future litigation was to admit everything in CATS' second complaint and immediately implement design reduction Best Management

Practices (BMPs) designed to eliminate *all* storm water discharge from Defendants' facility as the only viable way to end a seemingly never-ending cycle of lawsuits. Those design reduction BMPs went into effect by mid-2021 and have been successful ever since implementation.

Going to this status, Defendants sealed off their four discharge locations and held storm water on site allowing it to dissipate into the soil for the rainy seasons of 2021-2022, 2022-2023, and 2023-2024. *Defendants remained in compliance during the time the injunction was active and thereafter.* Defendants remained under the injunction until May 1, 2023. They remain in compliance today with no discharge locations and all storm water held onsite to percolate into the ground naturally.

Defendants' Stormwater Pollution Prevention Plan ("SWPPP") dated February 2022, provides that all of the previous discharge locations were sealed/plugged at the facility in 2021 and that all stormwater from that time on remains on site to percolate back into the ground. This system has been successful and remains working since its installation, Defendants' Annual Reports, (official records with the State Water Resources Control Board) indicate that the facility has "eliminated" all stormwater discharge during the 2021-2022 season, the 2022-2023 season, and 2023-2024 season. Percipient witnesses including the Qualified Industrial Stormwater Practioner and consultants will affirm that the facility has eliminated discharge from stormwater since the installation of the system in 2021 to present.

Defendants filed a Motion to Dismiss the initial complaint (ECF Doc 17) on the basis that the complaint failed to plead sufficient plausible facts that would allow this Court to draw the reasonable inferences that Defendants were liable for the misconduct alleged. In response to that Motion to Dismiss, Plaintiff's filed an Amended alleging Defendants to have discharged stormwater everyday since the day after the earlier injunction was lifted - May 2, 2023 to present. However, Plaintiff's have no evidence in support of that assertion because Defendants have sealed off all discharge locations and have held storm water at the facility; they have eliminated all stormwater discharge from their facility.

3. Legal Issues.

The primary legal issues will focus on the compliance requirements of the General Permit, as applied to Defendants.

4. Motions.

Defendants filed a motion to dismiss, (Docket No. 17), and Plaintiff filed an amended Complaint, (Docket No. 20). The amended complaint mooted the motion to dismiss. Defendants filed a second motion to dismiss the amended complaint, (Docket No. 21), and that motion was denied (Docket No. 38). No other motions are pending at this time. Plaintiff anticipates filing a Motion for Summary Judgment.

5. Amendment of Pleadings

None are anticipated at this time.

6. Evidence Preservation

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirm that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

7. Disclosures

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(C), the parties completed initial disclosures on November 7th and 8th, 2024.

8. Discovery

Plaintiff propounded written discovery in October 2024, and Defendants provided responses. Plaintiff conducted an inspection of Defendants' property in November 2024. Defendants propounded written discovery in February 2025, and Plaintiff responded. In June 2025, Plaintiff conducted the deposition of Defendants' designated persons pursuant to Rule 30(b)(6). In August 2025, Plaintiff conducted a 3rd party deposition. In September 2025,

Plaintiff propounded it second set of written discovery and Defendants responded. Plaintiff has noticed another 3rd party deposition for April 2026.

Defendants have planned Plaintiffs depositions which will start to be conducted in June and July 2026 consistent with the individuals identified in Plaintiffs initial disclosures. Defendants believe that this matter cannot resolve short of dismissal or trial because there has been no discharge of stormwater from the facility, no violations from the water board and all of their BMPs have been successful in stopping any and all stormwater discharge.

**Proposed Discovery Plan**

(A) Changes to the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures will be made.

Other than the time to exchange initial disclosures, discussed above, no changes to the timing, form, or requirement for disclosures under Rule 26(a) are necessary in this case, at this time.

(B) Subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or limited to or focused on particular issues.

Plaintiff has conducted a combination of written discovery, depositions, and site inspections of the Facility. Plaintiff anticipates conducting at least one more site inspection during wet weather and conducting additional depositions of relevant Kernen employees. Plaintiff will conduct expert discovery as well. Plaintiff is amenable to phasing discovery into two phases: 1) discovery relevant to establishing liability; and 2) discovery relevant to remedies, including civil penalties, if liability is established.

*Proposed Discovery Schedule:*

September 30, 2026: Completion of non-expert discovery;

November 30, 2026: Last day for expert disclosure and exchange of expert reports;

December 30, 2026: Last day to exchange expert rebuttal reports;

January 31, 2027: Completion of expert discovery;

(C) Issues about disclosure, discovery, or preservation of ESI.

The documents at issue in this case are relatively few, and many of them have already been produced in the two prior actions. The parties anticipate the ESI portion of discovery in this case to be relatively minor.

(D) Issues about claims of privilege or of protection as trial-preparation materials.

The parties anticipate entering into a protective order governing the disclosure and use of designated confidential information, as they did in the prior actions.

(E) Change to the limitations on discovery imposed under the Federal Rules.

The parties do not anticipate a need to modify the discovery rules at this time.

(F) Any other order the Court should issue under Rule 26(c), or Rule 16(b) and (c).

Per (E) above, the parties anticipate requesting the Court to issue a protective order under Rule 26(c). Aside from the above, no other orders need to be issued at this time.

9. Class Actions

Not applicable.

10. Related Cases

There are no currently-pending related cases, though this case is related to case numbers 4:16-cv-04007-YGR, and 4:20-cv-01348-YGR.

11. Relief

Plaintiff seeks the following relief:

a. For the Court to declare Defendants to have violated and to be in violation of the General Permit and the Clean Water Act as alleged in Plaintiff's Amended Complaint;

b. For the Court to enjoin Defendants from discharging polluted storm water from the Facility except as authorized by the General Permit;

c. For the Court to enjoin Defendants from further violating the substantive and procedural requirements of the General Permit;

d. For the Court to order Defendants to immediately implement storm water pollution control technologies and measures that satisfy BAT and BCT and that prevent

pollutants in the Facility's storm water from contributing to violations of any water quality standards;

e. For the Court to order Defendants to comply with the General Permit's monitoring and reporting requirements, including ordering supplemental monitoring to compensate for past monitoring violations;

f. For the Court to order Defendants to prepare a SWPPP for its Facility consistent with the General Permit's requirements and implement procedures to regularly review and update the SWPPP;

g. For the Court to order Defendants to pay civil penalties of $68,445 per day per violation for all violations occurring after November 2, 2015, pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d) and 1365(a) and 40 C.F.R. §§ 19.1–19.4;

h. For the Court to order Defendants to take appropriate actions to restore the quality of navigable waters impaired or adversely affected by their activities;

i. For the Court to award Plaintiff's costs and fees (including reasonable investigative, attorney, witness, compliance oversight and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and,

j. For the Court to award any such other and further relief as this Court may deem appropriate.

12. Settlement and ADR

The parties have engaged in settlement discussions and were referred to Magistrate Judge Illman to conduct a settlement conference. The parties completed that settlement conference, but did not reach a settlement. No settlement discussions are ongoing at this time.

13. Other References

The case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

14. Narrowing of Issues

Plaintiff anticipates filing a motion for partial summary judgment in order to narrow the issues for trial in this matter. Plaintiff does not believe this case is suitable for any other mechanisms for narrowing or expediting trial presentation.

15. Expedited Trial Procedure

This matter is not suitable for the Expedited Trial Procedure of General Order No. 64, Attachment A.

16. Scheduling

Completion of non-expert discovery: September 30, 2026;

Last day for expert disclosure and exchange of expert reports: November 31, 2026;

Last day to exchange expert rebuttal reports: December 31, 2026;

Completion of expert discovery: January 30, 2027;

Last day to hear dispositive motions: April 30, 2027

Pretrial conference: July 29, 2027

Trial: August 30, 2027 – September 3, 2027 or at this courts discretion and calendar.

17. Trial

Plaintiff estimates the trial will require approximately five court days. Plaintiff has not requested a jury trial.

Defendants are not requesting a jury trial at this time and suspect if the case does proceed to court trial, no longer than 5 days.

18. Disclosure of Non-party Interested Entities or Persons

Plaintiff has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. Pursuant to Civil L.R. 3-15, as of this date, other than the named parties, there is no such interest to report.

19. Professional Conduct

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

20.  Other

Not Applicable.

Dated: March 9, 2026        /s/ William Carlon
                            Counsel for plaintiff

Dated: March 9, 2026        /s/ Allison Jackson
                            Counsel for defendant

CASE MANAGEMENT ORDER

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

Dated:
                            UNITED STATES MAGISTRATE JUDGE